## BREWSTER v. MASSEY et al.
### No. 15193.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 23, 1950.

Rawlings, Sayers, Scurlock & Daly, Wade, Davis & Callaway, Martin, Moore, Brewster & Dean, Cantey, Hanger, Johnson, Scarborough & Gooch, Thompson, Walker, Smith & Shannon, Frank E. Crumley, R. V. Nichols, and Samuels, Brown, Herman & Scott, all of Fort Worth, for relator.

Frank Massey, of Fort Worth, for respondent Frank Massey.

Bryan, Stone, Wade & Agerton and Simon, Wynn, Sanders & Jones, all of Fort Worth, for respondent Melvin (Mel) Faulk.

PER CURIAM.

This is an action for mandamus, filed originally in this court, and sought to be maintained here under authority of Acts 1930, 41st Leg., 4th C.S., p. 4, ch. 4, § 1, sometimes cited as Art. 1735a, Vernon's

Texas Civil Statutes, which provides that the Supreme Court or any Court of Civil Appeals shall have authority to issue a writ of mandamus against certain named officials to compel the performance of any duty imposed upon them by law.

Prior to January 1, 1948, Judge Walter Morris was elected to serve a term of four years beginning on January 1, 1948, as Judge of the 67th District Court, a district composed of the area which comprises Tarrant County. Judge Morris qualified and served as judge of such court until his death on August 4, 1950. Since the year 1950 fell in the middle of his term, and since his death occurred after the Democratic primary election was held that year, no one was nominated in the 1950 primary election for such office.

At the regular state convention of the Democratic Party held in Mineral Wells on September 12, 1950, Harris Brewster, the relator in this proceeding, was nominated by the convention for the office in question as the party nominee to appear on the November ballot. The nomination by the convention was made on recommendation of and pursuant to a resolution adopted by the state executive committee of the party, and the nomination was duly certified by the proper officers of the party to the county clerk of Tarrant County.

The Republican Party has named a nominee for said office, to appear on the November ballot, and has duly certified such nomination to the county clerk of Tarrant County.

On September 14, 1950, Mr. Frank Massey, one of the respondents in the present proceeding, filed a suit in the 126th District Court, in Travis County, seeking to enjoin the placing of Harris Brewster's name on the November ballot as the nominee of the Democratic Party. The Hon. Jack Roberts, Judge of the 126th District Court, also a respondent herein, issued a temporary restraining order, returnable September 21, 1950, which among other things enjoined the Hon. Melvin Faulk, as County Clerk of Tarrant County, from placing Mr. Brewster's name on the ballot as the Democratic nominee. Mr. Faulk, who is also a respondent in the proceeding before us, has heretofore stated in writing that he decided that he must await the final outcome of the Travis County suit before posting Mr. Brewster's name as the Democratic nominee or placing his name on the ballot as such, but has further stated that he has no personal interest in the matter, and no purpose other than to discharge his official duties when the courts shall have advised him what his duties are.

On September 18, 1950, Mr. Brewster filed in this court, after motion to file was granted, his petition for writ of mandamus, naming Mr. Massey, Mr. Faulk in his official capacity as County Clerk and as a member of the County Election Board of Tarrant County, and Judge Jack Roberts in his official capacity, as respondents. In response to a prayer in the petition, we caused to be issued at once a temporary restraining order enjoining Judge Roberts from proceeding further with the suit in the 126th District Court or from entering any orders therein other than to dismiss the suit, and enjoining Mr. Massey from prosecuting the suit in the 126th District Court or any action in any other court pertaining to the nomination of Mr. Brewster and the placing of his name on the November ballot, until and pending a hearing of the matter before this court on September 21, 1950. It being imperative that the entire matter be decided at an early date in order that Mr. Faulk may proceed with the posting of names of nominees and the printing of the ballots, all parties concerned were notified that the petition for writ of mandamus would be heard in this court at two o'clock in the afternoon, September 21, 1950. Respondents Frank Massey and Melvin Faulk filed replications in writing to the petition for mandamus, and written arguments, and at the time set for hearing the relator and the respondent Melvin Faulk appeared by counsel, the respondent Frank Massey appeared in person, and oral argument was presented to the court.

The essential facts of the case are not in dispute. Mr. Massey's justiciable interest in the matter arises from the fact that he has taken the necessary steps to have his name placed on the November ballot as an independent candidate for the office in ques-

tion, and asserts that he, as a member of the Democratic Party, desires and has the right not to be opposed by Mr. Brewster as the nominee of the Democratic Party under the circumstances which prevail. No question is raised concerning the statutory and constitutional qualifications of Mr. Brewster and Mr. Massey to serve as judge of said court.

The Supreme Court discussed at length in Love v. Wilcox, 119 Tex. 256, 28 S.W. 2d 515, 520, 70 A.L.R. 1484, the validity of Article 1735a, and the authority of the Supreme Court and the Courts of Civil Appeals to entertain an action for mandamus in a situation like the one now before us. The statute was declared to be valid. It was declared:

"No questions could arise of wider public interest or of graver importance to the state than those involving abridgment of rights of citizens to participate in government through the selection of those who may become public officials by means of party nominations. A speedy, *final* determination of such questions is at times possible only through the exercise of jurisdiction elsewhere than in the district court."

It was held that ordinarily rights may be enforced in a mandamus proceeding brought in the district court, appealed to the Court of Civil Appeals, and brought to the Supreme Court by writ of error, and that the extraordinary jurisdiction of the Supreme Court or Court of Civil Appeals cannot be successfully invoked where these ordinary remedies are complete and adequate. It was further held, however, that the Legislature did not exceed its powers in making it possible for the Supreme Court or Court of Civil Appeals to take original jurisdiction to issue the writ of mandamus where there is an urgent necessity for the exercise of such court's authority to maintain and protect the general rights and important interests of the state and the people. Referring to the case then before it, the court said:

"This case comes clearly within the class of cases involving the enforcement of the sovereignty of the state and the protection of the citizen's right to effective participation in his state's government. * * *

The primary laws of this state are based upon a recognition of political parties as agencies of the people for the exercise of the powers thus reserved to them by the Constitution. It necessarily follows as a part of the right of the people to organize political parties for the constitutional purposes stated that the people of the state have the power through their Legislature to enact laws having for their purpose the protection of the constitutional rights, declared in the provisions just quoted."

The court declared that if it should refuse to take jurisdiction, relator would be unable to procure any decision from the state's highest judicial authority, that no judgment of the district court could become final in time to be of any avail in view of the statutory rights of review by appellate courts, and that relator was therefore without other adequate remedy.

All that was said by the Supreme Court in justification of its assumption of jurisdiction is applicable to the question of assumption of jurisdiction by this court in the present case. The concurrent jurisdiction of the Court of Civil Appeals with that of the Supreme Court in such as case is expressly recognized by the Supreme Court in the case just cited.

In Benavides v. Atkins, 132 Tex. 1, 120 S.W.2d 415, the relator sought by an original action for mandamus filed in the Supreme Court to compel certain officers of the Democratic Party to certify him to the county clerk as the Democratic nominee for a certain office, and also to compel the county clerk and other named officials to cause his name to be placed on the official ballot as the party nominee. Respondents in the case questioned the jurisdiction of the Supreme Court to issue the writ of mandamus against the county clerk and the county judge, making the contention that Article 1735a conferred jurisdiction on the Supreme Court to issue the writ of mandamus against officers of a political party but not against county officials. The court held that it had authority to issue the writ of mandamus against the county clerk in his official capacity and the county clerk and the county judge as members of the county election board, because such was necessary to make

effectual the relief sought by the relator. Also, the Supreme Court, in another and similar original action for mandamus, ordered the county clerk to place the relator's name on the ballot, in Iles v. Walker, 132 Tex. 6, 120 S.W.2d 418.

We are convinced that we have at least potential jurisdiction of an action like that brought here by relator. Next to be considered is whether or not we should exercise such jurisdiction in view of the suit pending in Travis County.

It is held in Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063, and in many other cases, that when a court of competent jurisdiction has become possessed of a case its authority continues, subject to appellate authority, and another court possessing potential jurisdiction of the same subject matter ought not to interfere with the court first acquiring jurisdiction. We assume for the purpose of this opinion, without deciding the question one way or the other, that the Travis County district court has jurisdiction of the suit brought by Mr. Massey.

In Love v. Wilcox, supra, the Supreme Court discussed at length the proposition that ordinarily a suit should be commenced in the district court and then appealed to the appellate court, but held that urgent necessity might require the appellate court to assume original jurisdiction. It pointed out that in the case before it the realtor could not procure adequate relief by first commencing suit in the district court because he could not procure a final decision in time to be of any avail. The holding in Love v. Wilcox was by way of upholding the exercise of original jurisdiction by the appellate court where there had been no effort first made to obtain relief in the district court, but in Iles v. Walker, supra, litigation was pending in the lower courts when the Supreme Court, in an original action filed in the Supreme Court, assumed jurisdiction of the controversy, decided it, and ordered the proceedings in the lower courts dismissed. The court said [132 Tex. 6, 120 S.W.2d 422]:

"In the case at bar, as already shown, the contest proceedings in the District Court of Sabine County stand untried. Under the undisputed record, no final judgment can now be entered in such proceedings which can become effective to adjudge the nomination to either contestant or contestee in time to be of any value to either of them. It follows that such proceedings are now moot, Thomason v. Seale [122 Tex. 160, 53 S.W.2d 764]; Sterling v. Ferguson [122 Tex. 122, 53 S.W.2d 753]. Since such is the case there is nothing left for the District Judge to do except to dismiss the contest proceedings, and Iles, who received a majority of the votes on the face of the returns, is entitled to be recognized as the lawful nominee for the office here involved."

The Supreme Court ordered that the district court take no further action in the pending litigation except to dismiss it, and ordered that mandamus issue to compel the county clerk to print the relator's name on the ballot as the party nominee. 120 S.W. 2d 418, 423.

The Travis County suit has thus far proceeded only to the point of a hearing on the temporary injunction being set for September 21st. The case has not been set for trial on its merits. Under no ordinary procedure can that suit possibly be tried on the merits and the right of appeal be exercised effectively in time to be of any avail. If a temporary injunction should be issued on September 21st, or if it should be refused, the dissatisfied party could not appeal and obtain a ruling thereon by the appellate court before the necessary notices relating to the nominees must be posted and the ballots printed. The result would be that the valuable rights asserted by the respective parties to that suit would be decided, as a practical matter, by the outcome of the hearing on the prayer for temporary injunction. If for any reason the matter should be delayed in the district court, the rights of one or the other of the parties would effectively be settled by the mere failure to try the case at all. Such a situation ought not to be tolerated, and does not have to be tolerated, in view of the provisions of Article 1735a. The relief that such a situation requires is provided for by such statute.

For us to assume jurisdiction, under the urgent necessities of the case, will not be any failure on our part to pay due respect to the jurisdiction of the Travis County District Court nor its judge, the respondent Judge Roberts. It is simply a situation where the machinery of the law is such that the jurisdiction of the district court is not competent to afford effective relief to whichever of the parties is entitled to prevail in this controversy. The Supreme Court has declared that it has power to assume jurisdiction in such a situation, and clearly has held that the Court of Civil Appeals has concurrent jurisdiction to do likewise.

This brings us to the merits of the case. The question for decision is whether or not the action of the state convention was effective to require the placing of Mr. Brewster's name on the November ballot as the Democratic nominee.

A study of this question naturally begins with the opinion in Gilmore v. Waples, 108 Tex. 167, 188 S.W. 1037, 1039. Mr. Williams, a member of the State Railroad Commission, had been elected for a term extending until the year 1918, but died in the year 1916, after the date of the primary election held that year. The state executive committee of the Democratic Party undertook to nominate C. H. Huddleston as a candidate for the office. C. E. Gilmore brought suit to enjoin the officials of the party from certifying Mr. Huddleston as the nominee. The Supreme Court held that the attempted nomination of Mr. Huddleston by the state executive committee was invalid, because of the provisions of what is now Article 3165, R.C.S. The court declared, however, that the party did have the right to make a nomination in some manner not prohibited by law. It said:

"It is the undoubted right of a political party to make nominations for the elective officers of the people. The Legislature has the authority to prescribe reasonable methods to be employed for the purpose; but it does not possess the power to absolutely prohibit any nomination being made. Such an attempt would constitute an arbitrary interference with the liberty of the people to freely associate themselves for the purpose of expressing such choice for their elective offices as they might select and for reasons they might see fit. * * * The failure of the Legislature to provide any method for a nomination under the conditions created by the death of Mr. Williams does not mean that the Democratic party was without any authority to make a nomination for the office of Railroad Commissioner. In our opinion it has that authority. The mere failure of the Legislature to provide an available method does not defeat its right to make a nomination. The right exists and in our opinion might be exercised in any manner agreeable to party usage not expressly forbidden by law."

In Stanford v. Butler, 142 Tex. 692, 181 S.W.2d 269, 153 A.L.R. 1054, the court had before it certain questions concerning the nomination of presidential electors. The court re-affirmed the pronouncement just quoted from Gilmore v. Waples, and cited it as authority for holding that in the absence of a statute directing how the party should select its nominees for presidential electors, the party was free to follow any method which it might choose in keeping with party usages and customs, so long as it did not pursue a method expressly prohibited by law. In 'the case last cited it was contended that Article 2978 prohibited the appearance of any name on the general election ballot except those of candidates who had been actually nominated, either as a party nominee or as a non-partisan or independent candidate, in accordance with the provisions of Title 50 of the Revised Statutes. The court held that Article 2978 was not applicable to presidential electors, because the statutes did not require them to be nominated in the primaries. Likewise, the statutes do not require, nor contemplate, that nominations be made in the primary election for offices which are not expected to become vacant at the end of that year. There was no way a valid nomination could have been made in the primary election for judge of the 67th District Court in 1950, while the incumbent was still alive and serving, and had been elected for a term which was not to expire until the end of 1952.

Article 2978 is no more applicable to the present situation than it was to the nomination of presidential electors.

The pronouncements in Gilmore v. Waples concerning the right of a party to make a nomination for public office in some manner other than through the executive committee were expressly approved in Stanford v. Butler, and in no subsequent opinion of our appellate courts, although Gilmore v. Waples has often been cited, has there been any criticism of what was said in that case.

In Kilday v. Germany, 139 Tex. 380, 163 S.W.2d 184, 188, the Supreme Court, after quoting part of the excerpt which we have quoted from Gilmore v. Waples, said:

"The above authorities abundantly demonstrate that in the absence of a statute forbidding action by the State Democratic Executive Committee, it as the executive head of the party, has the right to prescribe reasonable rules by which the party may make nominations in cases not covered by the statutes."

The act of the state convention in nominating Mr. Brewster was taken pursuant to a resolution of the state executive committee, although we do not hold that the convention could not have made the nomination if the state executive committee had not recommended that it do so. Such a question is not before us.

Mr. Massey argues that the language of the Supreme Court in Gilmore v. Waples concerning the right of the party to make a nomination in some manner other than through action of the executive committee was dicta, in that the only holding required in the case was one to the effect that the committee nomination was invalid. The Supreme Court has several times quoted the language in question with approval, and we consider that we are bound by the declarations the Court has made.

The various holdings of the Supreme Court herein cited, and others cited in the briefs of the parties, recognize the principle that the people have a constitutional right to organize political parties and to nominate party members for public office. The principle is recognized that such parties, in the absence of statutes defining how nominations shall be made, or prohibiting nominations from being made in certain ways, may handle party affairs, including nominations, in such manner as the party members may see fit. The Court has recognized that the Legislature has enacted many statutes which regulate the affairs of political parties in great detail, but the Court has also recognized that a substantial area, so to speak, of party management has not yet been covered by the statutes. One way of speaking, it might be said that there are gaps, or omissions, in the general body of statutory regulation of party nominations. Gilmore v. Waples is forcibly illustrative of the principle that a party must be permitted to make a nomination, even though it cannot be done in some manner expressly described in the statutes, where it can reasonably be done, if there is no law prohibiting it. Stanford v. Butler permitted convention nominations where there was a failure of the statutes to cover nominations to the offices in question. Kilday v. Germany went so far as to permit the executive committee of the party to extend the time for filing beyond the date set by a mandatory statute, where the circumstances were so unusual that a literal compliance with the statute would have resulted in what the Court thought would be a fraud on the members of the party. In the situation before us, the time had passed, when it became known that the office would be vacant, when the party could have made a nomination in the July primary. Mr. Massey suggests that the party should have called a special primary election. It is a matter of such common knowledge that we will take judicial notice of it that the expenses of a special primary election in the district in question would likely have amounted to several thousands of dollars, and it is reasonable to suppose that the party officers considered that a nomination by special primary could not, as a practical matter, be made. We would have to go against all that has been said by our Supreme Court to hold that under such circumstances the Democratic Party would be cut off from making a nomination in some other manner that would not interfere with the orderly holding of the general election in November.

Mr. Massey vigorously contends that the State Convention was without power or authority to make a nomination for the district office in question, saying that if any convention could have made the nomination it should have been a convention composed of delegates only from the district. He says that nomination by the Democratic Party assures election in November, and that the result of the nomination by the state convention will be the election of a judge to serve in Tarrant County by delegates from every county in the State. We have given the most careful consideration to this contention, but believe that it has to be rejected under the circumstances of the present case. The county convention had already been held when Judge Morris died. The county executive committee was called to meet and consider the matter, but less than a quorum appeared at the meeting. A majority of those present declined, by means of tabling a motion, to take any action with respect to the nomination of a person for the office. The most accurate thing to say of the action of the county executive committee is to say that it failed to take action.

■ The state convention, under all the decisions, is the most authoritative body of the party, at least with respect to affairs of the party within the state, and under the principles which we have referred to undoubtedly has authority to attend to the business of the party in such way as it sees fit, subject to such regulations and limitations as have been imposed by the statutes. There was presented to the state convention a situation where an important public office was to be filled in the general election. The Republican Party had nominated one of its members, and two persons had announced as independent candidates. If there was to be a nomination by the Democratic Party, some action had to be taken. The state executive committee of the party proposed to the convention a method for making the nomination, which the entire convention adopted. Under all the pronouncements of our courts, we feel compelled to hold that the nomination was valid. Mr. Massey cites an Illinois case, Swiney et al. v. Peden et al., 306 Ill. 131, 137 N.E.

405, where it was declared that a county convention could not make nominations for city offices. We have carefully studied the opinion in the case, but feel that the decisions of our own state require the holding that we make.

Mr. Massey points out that Mr. Brewster first filed as an independent candidate, and argues that the fairest way to fill the office in question would be to permit the people of the county to select the candidate they prefer in the general election, again calling attention to the fact that nomination by the Democratic Party practically assures election of the person nominated. As we see it, this argument is beside the point. If the Democratic Party had the right to make a nomination through action of the state convention, Mr. Massey is without any legal ground to support his argument that he should have a right to run against Mr. Brewster on even terms in the general election. The right of the party and of all its members to have a nominee on the November ballot cannot be ignored.

■ Mr. Massey calls attention to the statutes which impose upon the state convention certain duties to perform and says that it cannot perform any other functions. We hold that the statutes are not exclusive in their operation in this respect.

In view of what is said above, we hold that we have jurisdiction of the petition for mandamus, and that the circumstances require that we exercise jurisdiction despite the pendency of the suit in the Travis County District Court. Article 1735a authorizes us to issue the writ of mandamus directing the County Clerk to place relator's name on the ballot. Article 1823 provides that Courts of Civil Appeals and the judges thereof may issue writs of mandamus and all other writs necessary to enforce the jurisdiction of said courts. Under Article 1823 we are authorized to prohibit the further prosecution of the Travis County suit, and to order that it be dismissed, even though Travis County is not within the Second Supreme Judicial District. Cattleman's Trust Co. of Fort Worth v. Willis, Tex.Civ.App., 179 S.W. 1115; National Debenture Corp. v. Adams, Tex.Civ.App., 115 S.W.2d 757; Guaranty Building &

Loan Co. v. Brazil, Tex.Civ.App., 141 S.W. 2d 694.

Accordingly, it is ordered and adjudged:

1. That Harris Brewster is the Democratic nominee for the office of Judge of the 67th District Court of Tarrant County, and his name should be placed on the ballot for the general election to be held on November 7, 1950, as such nominee.

2. That the District Court of Travis County, 126th Judicial District, and the Honorable Jack Roberts, as Judge of said Court, take no further action in Cause No. 87583 on the docket of said court, styled Frank Massey v. John Ben Shepperd et al., except to dismiss said cause.

3. That the respondent Frank Massey be enjoined from prosecuting any action in any court, other than in the Supreme Court of Texas, concerning the nomination of Mr. Brewster as judge aforesaid, and concerning the placing of Mr. Brewster's name on the general election ballot as such nominee.

4. That the restraining order heretofore issued from said Travis County District Court, enjoining the County Clerk from placing the name of Mr. Brewster on the ballot as the Democratic nominee for the office in question, is dissolved by operation of law and is of no further force or effect.

5. That a writ of mandamus issue to compel the respondent Melvin Faulk as County Clerk to place Mr. Brewster's name on the general election ballot as the Democratic nominee for the office in question; that a writ of injunction issue to restrain the respondent Massey from prosecuting any action concerning such nomination other than in the Supreme Court of Texas; and that a writ of prohibition issue to the respondent Judge Jack Roberts to prohibit any further action in the Travis County suit, above mentioned, other than to dismiss said suit and to adjudge costs.

6. That the costs of this proceeding be adjudged against the respondent Frank Massey.

7. That this judgment shall be finally effective immediately, and this Court will entertain no motion for rehearing herein.