Eugene C. Williams v. Fred Huntress et al

No. A-4898. Decided October 1, 1954.
(272 S.W. 2d Series 87)

*Hubert W. Green, Sr., Hubert W. Green, Jr., Brewer, Matthews, Nowlin and McFarlane, W. Forney Nowlin, Dodson, Duke & Branch, Charles W. Duke, Clifford Davise, Elmer Ware Stahl, Foster, Langley & Lewis and Ralph G. Langley,* all of San Antonio, for relator.

*Cofer & Cofer and John D. Cofer,* of Austin, *Franklin Scott Spears, James E. Barlow, Adrian A. Spears,* and *John F. Onion, Jr.,* Crim. Dist. Atty. all of San Antonio, for respondent.

MR. JUSTICE WILSON delivered the opinion of the Court.

Relator seeks to mandamus the County Clerk of Bexar County to print his name upon the ballot for the General Election in November as the democratic nominee for Judge of the Special Thirty-Seventh District Court.

This court was created at the last Called Session of the Legislature to become effective September 1st and a nominee was not chosen in the summer primary.

The first problem is whether or not the State Democratic Convention has the power to choose the party nominee. This is raised by the fact that the relator has a certificate from the State Convention certifying him as the party nominee. Mr. Adrian Spears has another certificate emanating from what he contends is the County Convention certifying him as the party nominee.

Mr. Spears contends that in Article 14.01 a county office is defined as an office elected by the voters of one county only. Since this court is for a one-county district, he contends it is a county office. In the recent case of Carpenter v. Longuemare, 153 Texas 439, 270 S.W. 2d 457, this court held (the writer dissenting) that the definitions contained in Article 14.01 were not controlling of all portions of the Code. It is settled that a one-county District Court is a district office in spite of the definition now contained in Article 14.01, Election Code, V.A.T.S. Hamilton v. Monroe, Texas Civ App. 1926, 287 S.W. 304, affirmed 116 Texas 153, 287 S.W. 306; Bounds v. McCallum, 122 Texas 116, 52 S.W. 2d 1047. Consequently, we now hold that a special one-county District Court is a district office.

In regulating party affairs, the legislature has specifically placed the power of appointment to select party nominees in certain situations. For instance, see Article 8.22, Election Code. We have found no statute specifically placing the power of appointment for a district office where the need for appointment arises from the fact that a new office has been created in such a fashion that the nominee is not selected at the regular primary.

■ The law is settled that where the legislature has not specifically regulated party affairs, the party itself has the right to prescribe rules and regulations governing itself. Kilday v. Germany, 139 Texas 380, 163 S.W. 2d 184; Gilmore v. Waples, 108 Texas 167, 188 S.W. 1037.

In April, at a regular meeting of the State Democratic Executive Committee, that body was confronted by the fact that the legislature had created ten Special District Courts. It resolved:

"* * * that the State Democratic Executive Committee on this 24th day of April, 1954, adopt the following method for nominating candidates for the office of judge of said courts at the November General Election. That such nominations be made at the State Democratic Convention to be held on September 14, 1954. The names of such candidates for nomination to be placed before the State Convention by the respective district or county caucuses. The State Convention shall direct the secretary of said Convention to certify the names of those nominated by the State Convention to the appropriate county clerks in order that their names might be placed on the General Election Ballot as nominees of the Democratic Party for such offices;

"BE IT FURTHER RESOLVED that a copy of this Resolution be sent to all Democratic County Chairmen, in whose county a special district court will be created, by the Secretary of the State Democratic Executive Committee immediately following tha adjournment of this meeting."

It is contended that the April action of the State Democratic Executive Committee in prescribing a method for selecting candidates for Special District Judgeships was unreasonable and for that reason should be stricken down. The argument is: (1) that had the nomination been made through the primary laws, the nominee would have been chosen by the electors of Bexar County, and (2) since the nominee was not selected by the primary law, the only reasonable method of selection would be to have the representative of the electors of Bexar County assembled in County Convention make the selection. This question has already been determined to the contrary by Brewster v. Massey, Texas Civ. App. 1950, 232 S.W. 2d 678 (leave to file mandamus overruled by Supreme Court).

■ We hold that in this situation the State Convention had the power to select a candidate for district office and that it legally exercised that power. It seems to be uncontroverted that relator does have a regular certificate of nomination from the State Democratic Convention.

Mr. Adrian Spears filed a proceeding in the District Court of Bexar County seeking to mandamus the County Clerk to insert his name on the ballot and enjoining the insertion of relator's name. Relator also sought to mandamus the Clerk to put his name on the ballot. The trial court declined to decide either claim to the office because the matter would be moot before his decision could become final. In addition, Mr. Spears urged that relator had sought and obtained the nomination at the Democratic primaries as a candidate for Judge of a County Court at Law and that he had not declined that nomination until the 25th day of September, which was not twenty days prior to the beginning of absentee balloting for the General Election on October 13th. Mr. Spears contends that the declination was ineffectual leaving relator still a candidate for a County Court at Law. Mr. Spears asked for an injunction to keep relator's name off the ballot as a candidate for the District Court on the grounds that the same man cannot be simultaneously a candidate for two offices, and this the trial court granted on the 27th day of September. We allowed relator to file this mandamus and bring here a collateral attack on that injunction upon his con-

tention that the proceeding was moot for lack of time to secure final judgment through appellate processes.

■ This would not be subject to original attack here and within our jurisdiction if relator had an opportunity to correct an error of the trial court by normal appellate procedure. In view of the fact that ballots must be printed and in view of the public interest and the law declared in the cases of Sterling v. Ferguson, 122 Texas 122, 53 S.W. 2d 753 and Love v. Wilcox, 119 Texas 256, 28 S.W. 2d 515, 70 A.L.R. 1484, we hold the injunction to have been moot by reason of lack of time for appellate review and subject to collateral attack here. It is within our original jurisdiction to make our mandate effective.

■ Relator is not entitled to his mandamus unless he shows a clear legal right. This brings us to the question of whether or not he declined nomination as a candidate for the County Court at Law in time to accept the tendered nomination for the District Court. He may not be the party candidate for both offices. Art. 16, Sec. 40, Texas Constitution; Art. 1.05 and Art. 1.06, Election Code, V.A.T.S.; Westerman v. Mims, 111 Texas 29, 227 S.W. 178; Burns v. Wiltse, 1951; 303 N.Y. 319, 102 N.E. 2d 569; In Re Brook, 6 N.Y.S. 2d 954; Napton v. Meek, 8 Idaho 625, 70 Pac. 945.

Art. 13.56, Election Code, V.A.T.S., states that "A nominee may decline and annul his nomination by delivering * * * ten days before the election if it be for a city office, and twenty days in other cases, a declaration in writing * * *." The question is raised here as to whether the words "before the election" mean twenty days before the election day or twenty days before the day absentee balloting commences.

When we look to other portions of the Election Code, we conclude that generally the words "the election" are synonymous with election day. Art. 2.01, Election Code, provides that "the election shall be held for one (1) day only." Art. 5.05, Subdivision 3, provides for absentee voting: "At any time not more than twenty (20) days, nor less than three (3) days, prior to the date of such an election * * *." Art. 5.05, Subdivision 10, provides that the ballot of an absentee voter who dies after voting absentee, but before the canvassing of the votes, shall not be counted.

Before 1931, absentee balloting commenced ten days before the election. Therefore before 1931, if the declination was filed

twenty days before the day of election, there was still a period of ten days within which a new candidate might be selected and the ballots corrected. In 1931 the absentee voting period was extended to twenty days before election day, but no change was made in the twenty-day period for declining. H.B. 48, Reg. Sess. 1931, p. 180, Ch. 105, 42d Leg. Evidently the legislature changed the ten-day period for absentee voting and overlooked changing the twenty-day period for filing a declination, and we now call this to the attention of the legislature.

We hold that the twenty-day period provided in Art. 13.56, Election Code, is calculated from the election day.

Relator having established a clear legal right to have his name on the ballot for District Judge, the petition for mandamus is granted.

Time will not permit a rehearing, so no motion for rehearing will be filed.

Opinion delivered October 1, 1954.

MR. JUSTICE GARWOOD dissenting.

No doubt the State Convention did have authority to nominate Judge Williams, and the exercise of this authority cured any vice in the presentment of his name to the Convention by even a spurious delegation, if the seated Bexar County delegation were actually spurious.

On the other hand, I think the judgment of the District Court to the effect that an actual nominee for another office, as Judge Williams was, cannot validly decline his nomination later than twenty days prior to the beginning of absentee voting, and that Judge Williams was accordingly not in a position to accept the nomination which the State Convention accorded him, was correct. The Statutes are certainly open to this construction, which is one that makes for simplicity and clarity in political matters and affords the absentee voter a better chance than he would otherwise have to exercise his franchise with full knowledge of who the candidates for the various offices are. Obviously, it is no great hardship on a person holding a nomination for one office to require him to make up his mind between that nomination and a nomination for a different office well in advance of the absentee voting period. We have little enough knowledge, as it is, about the many different candidates on our long ballots,

and the more time we have to acquire knowledge, the more intelligent our vote will be.

Moreover, and even if the foregoing conclusion be erroneous, the injunction suit which the District Court at San Antonio decided against Judge Williams would not seem to be moot, and we art therefore confronted with a judgment which we have no power to disturb. The system of letting a suit pend for half a month in the district court, then proceeding to try it for several days and then appealing to the Supreme Court on the ground that the case is moot and the trial court judgment accordingly void, or otherwise subject to review by the mandamus route, is hardly one to be encouraged by straining our conception of "moot." The injunction was clearly an independent suit wholly disconnected from the rest of the case. It involved no fact questions and only a single question of law. Considering our various rules for expediting appellate review in injunction cases, the obvious interests of both parties in a quick decision and the well-known disposition of our appellate courts to act promptly when necessary, there would seem to have been adequate time for this case to have pursued the true appellate route in time for the decision to be available before the beginning of absentee voting.

I think the petition for mandamus should be denied.

Opinion delivered October 1, 1954.