

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

June 9, 1960

Hon. Alwin E. Pape
County Attorney
Guadalupe County
Seguin, Texas

Opinion No. WW-857

Re: Time within which a write-in
nominee may accept or de-
cline the nomination; whether
a voter may sign the petition
of more than one independent
candidate for the same office;
time for circulation of pe-
titions for independent
candidates.

Dear Mr. Pape:

You have submitted the following opinion request to this office:

"County and precinct officers have for many years
been elected on an independent column of the ballot
in Guadalupe County, as provided for under the present
Election Code Articles 13.50-13.53 inclusive, which
are a rewrite of the old statutes on the same subject,
with two minor changes within the last few years. In
the primary elections held in this county, the district
and state candidates have been voted on, with county
and precinct candidates not appearing thereon, although
spaces were left for the purpose of write-ins.

"On May 7, 1960, there were several write-ins, and
also a few regularly listed precinct and county candi-
dates. This has now brought on several questions, which
need to be answered soon, and there is very little law
on the subject, and there are very few cases thereto
pertaining.

"Questions:

"1. How much time does a write-in nominee have to
accept or reject the nomination he has received?

"2. In the event that there are two or more prospective
candidates for the same office, may a qualified voter sign
more than one of the petitions?

"3. A nomination having been made for a particular office, and no run-off being necessary, how soon after the first primary election may a petition be started around, for signatures, to be filed with the County Judge within 30 days after the second primary election day?"

Where the title of the office appears on the ballot with a space provided for writing in the name of a candidate, the voters have notice that the office is subject to being voted on at the election, although no candidate's name is listed on the ballot. The validity of write-in votes in the first primary, where the voters had notice that the office was subject to being voted on, is well established, and a nomination by means of write-in votes may be made at the first primary. Arts. 6.06 and 13.09, Election Code; Dunagan v. Jones, 76 S.W.2d 219 (Tex.Civ.App. 1934); Cunningham v. Queen, 96 S.W.2d 798 (Tex.Civ.App. 1936); Carpenter v. Longuemare, 153 Tex. 439, 270 S.W.2d 457 (1954); Att'y Gen. Op. WW-541 (1959).

Your question as to how much time a write-in nominee has to accept or reject the nomination becomes relevant to applications of independent candidates, which must be filed within 30 days after the second primary election, because of the following provision in Article 13.50 of the Election Code:

"* * * and provided, also that no person who has voted at a primary election shall sign an application in favor of any one for an office for which a nomination was made at such primary election."

In connection with this question, you have made the following statement in the brief accompanying your opinion request:

"Relating to Question No. 1, apparently a nominee may decline the nomination at any time before the general election. If, however, there is no acceptance, and petitions are filed by qualified voters endorsing another candidate or candidates for that particular office, signed by voters who did participate in the primary, and accepted by the County Judge within the period of time within 30 days after the second primary, it would seem that such petition is not good if later the nominee does accept the nomination. The acceptance or declination should be prior to the time within 30 days after the second primary, when the independent candidates' petitions may be filed, and not afterwards."

In order for a candidate's name to be printed on the first primary ballot, he must show his consent to such candidacy by filing a written application or by signifying his consent on the application signed by qualified voters. Art. 13.12, Election Code. While the Election Code impliedly recognizes that a person may be nominated or become a candidate in the run-off primary by means of write-in votes in the first primary, it does not expressly provide that a write-in candidate who receives sufficient votes for nomination must affirmatively accept the nomination in order to become the party nominee. We therefore are confronted with the question of whether a write-in candidate may become the party nominee without having affirmatively accepted the nomination.

The reason for requiring acceptance of the nomination would be to avoid placing on the ballot the name of a person who was unwilling to be the party's candidate for the office. Where a person has announced as a write-in candidate or has conducted or acquiesced in a write-in campaign in his behalf, his willingness to accept the nomination may be presumed. It would be only in instances where the person has not actively sought nomination or acquiesced in the efforts of others to secure the nomination for him that any real necessity might arise for an affirmative acceptance of the nomination. In our opinion, the county executive committee could require a write-in candidate for a county or precinct office to signify his acceptance of the nomination before certifying him as the party nominee and could refuse to certify him if he failed to accept within a reasonable time; but it may also proceed on the assumption that he is willing to be the nominee and certify his nomination without an affirmative acceptance. The Election Code provides for declination of nominations, and a person who has been certified as a nominee without his consent may use that method for avoiding the nomination if he does not wish to accept it.

Article 13.56 of the Election Code, which provides for the declination of a nomination, reads as follows:

"A nominee may decline and annul his nomination by delivering to the officer with whom the certificate of his nomination is filed, ten (10) days before the election, if it be for a city office, and twenty (20) days in other cases, a declaration in writing, signed by him before some officer authorized to take acknowledgements. Upon such declination (or in case of death of a nominee), the executive committee of a party, or a majority of them for the State, district or county, as the office to be nominated may require, may nominate a candidate to supply the vacancy by filing with the Secretary of State in the case of State or district officer, or with the county judge, in the case of county or precinct officer,

a certificate duly signed and acknowledged by them,
setting forth the cause of the vacancy, the name of
the new nominee, the office for which he was nominated
and when and how he was nominated. No executive com-
mittee shall ever have power of nomination, except where
provided for by law."

Under this statute, a nominee for a county or precinct office may
decline the nomination at any time up to twenty days before the day
of the election. Westerman v. Mims, 111 Tex. 29, 227 S.W. 178
(1921); Williams v. Huntress, 153 Tex. 443, 272 S.W.2d 87 (1954).
A write-in nominee has the same period of time as any other type
of nominee for declining the nomination, and upon his declination
the county executive committee has the power to name a substitute
nominee. We have said that the county executive committee could
require a write-in candidate to signify his acceptance of the nomi-
nation before certifying him as the party nominee. If he declined
the nomination and was not certified, we think he would nevertheless
have been the party nominee for the purpose of enabling the committee
to name a substitute nominee. Article 13.56 specifies the procedure
for declination after certification, but a nominee may also decline
before he has been certified. Stackpole v. Hallahan, 16 Mont. 40,
40 P. 80 (1895). If he accepted the nomination, he would still be
free to decline it at a later date, within the time allowed by
Article 13.56, whereupon the committee could name a substitute.

Article 13.50 makes a person ineligible to sign the appli-
cation of an independent candidate if he has voted in a primary at
which a nomination was made for the office which the independent
candidate is seeking. The disqualification applies to every person
who voted in the primary, regardless of whether he cast a vote for
that office. In our opinion, the disqualification carries over to
substitute nominees, and the original nominee's declination does
not remove the ineligibility unless the executive committee having
the power to name a substitute nominee fails to exercise that power.
This provision is designed to prevent a voter in the primary from
signing the application of an independent candidate only if there
will be a party nominee running in the general election. If there
will be no party nominee to be voted on in the general election,
the reason for the disqualification disappears and the voter is
free to sign the application of an independent candidate.

The county executive committee is not required to make a
substitute nomination within any given time after declination.
Without attempting to fix the exact time limit, we may safely say
that in any event a substitute nomination may be made up to the
time for posting the names of candidates under Article 13.32 of the
Election Code, and may be made up to 20 days before the election if
the vacancy in the nomination occurred only a short time before that

date.  Arts. 6.04 and 13.56.  If the nominee declines the nomination before expiration of the time for independent candidates to file, the ineligibility of voters in the primary to sign independent applications will continue through the period for signing unless the executive committee declares that it will not make a substitute nomination.  Until the executive committee acts, these voters will not know whether they are free to sign.

The situation in your county is an unusual one.  Doubtlessly, many of the voters who participate in the primary do not take part in the write-in voting for county and precinct offices and wish to be free to sign applications of independent candidates in these races. In the interest of fair play, the write-in nominees should make their intentions known, and in case of a declination the county executive committee should make its decision on whether it would name a substitute nominee, without undue delay so that voters in the primary could sign applications for independent candidates if no party nominee was to appear on the general election ballot; but neither the nominee nor the committee has a legal duty to act within 30 days after the second primary.

Your second question is whether a voter may sign the application of more than one independent candidate for the same office. You have made the following statement in your brief:

"Regarding Question No. 2, it has been the practice in Guadalupe County for many years to let a qualified voter sign any and all petitions presented to him endorsing two or more persons as candidates for the same office, without restriction.  This has been on the theory that letting a voter sign only one petition, it would be in effect pledging that signor to vote for and support the person whose petition he has signed, and thus give the voter no choice if two or more persons' names appear on the ballot for the same office. Further, there is nothing in the statutes that prohibits such practice, hence it is not prohibited by implication, either.  The only reference in the Code to this practice appears in Art. 13.50, which states '* * * provided that, if the office is one to which two or more persons are to be elected, his application may be for as many candidates as there are persons to be elected to that office,* * *.'"

The above quoted proviso appears in the following sentence:

"No application * * * shall contain the name of more than one (1) candidate, and no citizen shall sign such application, unless he has paid his poll

tax or received his certificate of exemption; provided, that, if the office is one to which two or more persons are to be elected, his application may be for as many candidates as there are persons to be elected to that office; and provided, also that no person who has voted at a primary election shall sign an application in favor of any one for an office for which a nomination was made at such primary election."

It is not clear whether the prohibition against an application's containing the name of more than one candidate is intended to prevent the filing of a single application nominating a slate of candidates for several offices, or merely to prevent nomination in one application of two or more candidates for the same office. Unquestionably, an application may not contain the name of more than one candidate for the same office, unless the office is one to which two or more persons are to be elected. On the other hand, Article 13.50 does not expressly prohibit a voter from signing a separate application for another candidate for the same office.

In Attorney General's Opinion No. V-1513 (1952), it was asserted that the purpose of requiring a minimum number of signatures is to show that there is a sufficient number of qualified voters supporting the nomination of the proposed candidate to justify granting him a place on the ballot. We have not found any Texas case discussing the purpose of the requirement, but this is the reason assigned by courts of other jurisdictions. See, e.g., State v. Poston, 59 Ohio St. 122, 52 N.E. 196 (1898). By signing the application, the voter is "endorsing" the candidate (Article 13.53, Election Code), and endorsement imports support. While a signer does not unalterably commit himself to vote for that candidate at the election, the spirit of the statute is that persons signing an application are signifying a present good faith intention to support the candidate at the election. In our opinion, it is contrary to the spirit of the law for a person to sign a second application for the same office unless he has withdrawn his signature from the previous application. (On withdrawal of signatures from election petitions, see 18 Am.Jur., Elections, § 123; Annotation, 27 A.L.R.2d 604; Nunn v. New, 222 S.W.2d 261 (Tex.Civ. App. 1949), rev'd on other grounds, 148 Tex. 443, 226 S.W.2d 116.)

All the cases we have found on the question of whether a voter may sign the application of more than one candidate for the same office have held that he may not do so. However, these cases have been based on express statutory prohibitions. See 26 C.J.S., Elections, § 110, 18 Am.Jur., Elections, § 121, and cases cited thereunder. As we have said, Article 13.50 does not expressly prohibit a voter from signing more than one application. Article 13.52,

which by reference in Article 13.53 also controls the action of the county judge with respect to applications of county and precinct[1] candidates, reads as follows:

"The Secretary of State shall, on receipt of the application which conforms to the above requirements, issue his instruction to the county clerks of this State, or of the district, as the case may require, directing that the name of the citizen, in whose favor the application is made, shall be printed on the official ballot in the independent column * * *."

Although the law evidently contemplates that a person will not sign an application unless he has a present intention of supporting that candidate and will not endorse a candidate while his endorsement of an opposing candidate is still in effect, in the absence of an express prohibition against signing the application of more than one candidate we are unable to say that an application which bears the required number of signatures fails to conform to the statutory requirements because some of the signers had signed other applications in favor of opposing candidates. We consider this to be a deficiency in the statute which would have to be cured by legislative amendment. We therefore hold that the county judge does not have the authority to disregard a signature on the ground that the voter had signed more than one application.

In your third question you ask how soon after the first primary may a petition be circulated. You have made this statement in your brief:

"It appears that if a nomination for a particular office was made at the first primary election, or if none was made, a petition could be circulated immediately for signatures for independent candidates, or at least when the result of the first primary election has been ascertained."

We agree with your conclusions. Article 13.50 provides that the application shall be delivered "within thirty days after the second primary election day." The statute does not expressly state

---

[1]Independent candidates for precinct offices may be nominated in accordance with the provisions of Article 13.53, Election Code. Dancy v. Hunt, 294 S.W. 2d 159 (Tex.Civ.App. 1956, error ref. n.r.e.).

that the application shall not be circulated before any certain date, but one of the requirements for signers is that they must not have voted at a primary election for which a nomination for the office was made and they must take an oath that they have participated in no primary election which has nominated a candidate for the office. Arts. 13.50 and 13.51. Signers would not be in a position to make this oath until after the date of the first primary, or in case a run-off election was necessary for the office involved, until after the date of the second primary. Voting in the second primary does not disqualify a person from signing an application for an office for which a nomination was made in the first primary. Weatherly v. Fulgham, 153 Tex. 481, 271 S.W.2d 938 (1954). If a nomination was made in the first primary, or if no votes were cast for that office in the first primary, there would be no run-off election for that office and the voters would be in a position to make the oath immediately after the first primary results were ascertained.

## SUMMARY

A write-in candidate who receives a majority of the votes in the first primary may be certified as the party nominee without express acceptance of the nomination. However, the appropriate executive committee could require a write-in nominee to accept the nomination before certifying him as the party nominee and could refuse to certify him unless he accepted within a reasonable time. Where a write-in candidate has been certified as the party nominee, he may decline the nomination at any time prior to 20 days before the general election. Upon declination of the nomination, either before or after certification, the appropriate executive committee may name a substitute nominee. If a nomination is declined and the executive committee decides not to make a substitute nomination, persons who voted in the primary may sign applications of independent candidates for the office involved. The deadline for signing and filing applications for independent candidates is 30 days after the second primary, but the party nominee and the executive committee are not under a legal duty to announce their decisions within this period of time.

Articles 13.50-13.53 of the Election Code, pertaining to nomination of independent candidates, contemplate that signers of a petition for an independent candidate have a present intention to support the candidate in the general election and that they will not sign the application of an opposing candidate. However, these statutes

do not expressly prohibit a person from signing the application of more than one candidate for the same office, and a signature on an application is not rendered invalid because the person has signed more than one application.

Where a nomination for a particular office was made in the first primary, or where no votes for the office were cast in the first primary, a petition for an independent candidate may be circulated as soon as the results of the first primary are ascertained.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Mary K. Wall*
Mary K. Wall
Assistant

MKW:ljb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman

Thomas Burrus
J. C. Davis, Jr.
Leon F. Pesek

REVIEWED FOR THE ATTORNEY GENERAL
BY
Leonard Passmore