

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 17, 1962

Honorable Jules Damiani, Jr.
Criminal District Attorney
Galveston County Courthouse
Galveston, Texas

Opinion No. WW-1384

Re: Whether a political party
has authority to nominate
a candidate for the office
of County Tax Assessor-
Collector to go on the
General Election ballot,
where the incumbent Tax
Assessor-Collector died
with more than two years
left in his term of office,
such death occurring too
late to select a nominee
at the Primary election.

Dear Mr. Damiani:

In your letter you state:

"John H. Oberndorfer was elected to
the office of Assessor-Collector of Taxes
of Galveston County, for a period of four
years, at the General Election in Novem-
ber, 1960. as provided by the provisions
of Art. 16, paragraph 65 of the Consti-
tution of the State of Texas, and held
that office until his death on May 31st,
1962, (during the middle of his term of
office).

"The vacancy in the office of Assessor-
Collector of Taxes has been filled by ap-
pointment by the Commissioners Court as
provided for by Art. 2355, R.C.S. until
the next general election.

"The office of Assessor-Collector of
Taxes was not on the ballot at the Demo-
cratic Primary election of Saturday, May
5th, 1962."

You have asked the following questions:

"As there was no nominee for the of-
fice of Assessor-Collector of Taxes on

the May Primary Election ballot, the question arises, does any political party (either Democratic, Republican or otherwise) have the authority to meet and nominate a nominee, whose names would be printed upon the Official Ballot at the General Election to be held on November 6th, 1962?

"Secondly - should the Attorney General hold and/or should a court of competent jurisdiction decide that a political party does not have the authority to nominate a candidate whose name would go upon the General Election ballot in November, and further should no petition of an Independent candidate be filed with the county judge, as provided by Art. 13.53, Election Code, would the Electoral Board have the authority to place the office of Assessor-Collector of Taxes on the General Election ballot in November, so that a voter would have the right to write-in the name of a candidate of his choice, for said office, as is provided for in Sec. 16, Art. 7.14, Election Code, under the provisions of the voting machine laws; Galveston County having adopted and are using voting machines in all elections?"

Art. 6.04, Texas Election Code, reads in part as follows:

"If a nominee dies or declines his nomination, and the vacancy so created shall have been filled, and such facts shall have been duly certified in accordance with the provisions of this Code, the Secretary of State or County Judge, as the case may be, shall promptly notify the official board created by this law to furnish election supplies that such vacancy has occurred and the name of the new nominee shall then be printed upon the official ballot, if the ballots are not already printed. . . .

"If a state or district official who is serving a four (4) or a six (6)

year term should die or resign on the
even numbered year in which he is not
a candidate, after the filing date of
the first primary election and before
the printing of the ballot for the gene-
ral election, the state committee for
each political party in the case of
state officers and the appropriate dis-
trict committee for each political party
in the case of district officers shall
have the power to name a nominee for
such position and to certify the name
to the proper election board to have
the name printed on the general elec-
tion ballot. . . ."

Art. 13.56, Texas Election Code, reads as follows:

"A nominee may decline and annul
his nomination by delivering to the
officer with whom the certificate of
his nomination is filed, ten (10) days
before the election, if it be for a
city office, and twenty (20) days in
other cases, a declaration in writing,
signed by him before some officer
authorized to take acknowledgments.
Upon such declination (or in case of
death of a nominee), the executive com-
mittee of a party, or a majority of
them for the State, district or county,
as the office to be nominated may re-
quire, may nominate a candidate to
supply the vacancy by filing with the
Secretary of State in the case of State
or district officer, or with the county
judge, in the case of county or precinct
officer, a certificate duly signed and
acknowledged by them, setting forth the
cause of the vacancy, the name of the
new nominee, and office for which he
was nominated and when and how he was
nominated.  No executive committee
shall ever have power of nomination,
except where provided for by law." /Em-
phasis added/

Art. 6.04, Election Code, provides the procedure to be followed if an <u>office holder</u>, who holds a <u>state or district office</u> should die or resign in the middle of his four or six year term. Art. 13.56 sets out the procedure to be followed in the case of <u>death of a party nominee</u>, or <u>declination of nomination by a party nominee.</u> Mr. Oberndorfer did not hold a state or district office; he held a county office. So, Art. 6.04, Election Code, does not apply to your situation. Mr. Oberndorfer was not a nominee; 1962 is not the year for County Tax Assessor-Collector's terms of office to expire. No party nominees were selected in the Primary elections of 1962. Had Mr. Oberndorfer's death occurred earlier in the year, it would have been possible for the County Executive Committee of each party to announce that they would accept applications from candidates for the unexpired term of Mr. Oberndorfer, announce the amount of the filing fee and set a deadline for filing. This was done this year in Travis County, upon the death of its Tax Assessor-Collector. See Attorney General's Opinion No. WW-827 (not applicable to State and district offices. <u>Meyers v. Smith</u>, 314 S.W.2d 631). But Mr. Oberndorfer's death occurred after the First Primary election of May 5, 1962. The person appointed by the Commissioners Court serves only until the General Election of November, 1962. His successor will be selected at that election, and will serve out the remainder of Mr. Oberndorfer's term.

This situation is clearly not covered by the Election Code. In <u>Brewster v. Massey</u>, 232 S.W.2d 678 (Civ.App. 1950; Mand. overruled), the courts were faced with a similar situation. To show the similarity of situations, we quote from the Court's statement of the facts, at page 679:

> "Prior to January 1, 1948, /1949 ?/ Judge Walter Morris was elected to serve a term of four years beginning on January 1, 1948, /1949 ?/ as Judge of the 67th District Court, a district composed of the area which comprises Tarrant County. Judge Morris qualified and served as judge of such court until his death on August 4, 1950. Since the year 1950 fell in the middle of his term, and since his death occurred after the Democratic primary election was held that year, no one was nominated in the 1950 primary election for such office.
>
> "At the regular state convention of the Democratic Party held in Mineral

Wells on September 12, 1950, Harris Brewster, the relator in this proceeding, was nominated by the convention for the office in question as the party nominee to appear on the November ballot. The nomination by the convention was made on recommendation of and pursuant to a resolution adopted by one state executive committee of the party, and the nomination was duly certified by the proper officers of the party to the county clerk of Tarrant County."

At page 682, the Court stated:

". . . the statutes do not require, nor contemplate, that nominations be made in the primary election for offices which are not expected to become vacant at the end of that year. There was no way a valid nomination could have been made in the primary election for Judge of the 67th District Court in 1950, while the incumbent was still alive and serving, and had been elected for a term which was not to expire until the end of 1952. . . ."

And at page 684, the Court held:

"The state convention, under all the decisions, is the most authoritative body of the party, at least with respect to affairs of the party within the state, and under the principles which we have referred to undoubtedly has authority to attend to the business of the party in such way as it sees fit, subject to such regulations and limitations as have been imposed by the statutes. There was presented to the state convention a situation where an important public office was to be filled in the general election. . . . Under all the pronouncements of our courts, we feel compelled to hold that the nomination was

> valid. . . . The right of the party
> and of all its members to have a nomi-
> nee on the November ballot cannot be
> ignored."

In 1951 the Texas Election Code was enacted, and included
therein was Art. 6.04, supra. When a vacancy occurred in the
office of Judge of the Criminal District Court No. 3 of Harris
County, on June 1, 1958, in the middle of the judge's four year
term, the Democratic District Committee selected one Love as
the Democratic nominee for that office. Thereafter, the Demo-
cratic State Convention, acting on a resolution by the state
executive committee, nominated one Krichamer, as had been done
in the Brewster v. Massey case, supra. In Love v. Miller, 316
S.W.2d 269 (Civ.App., 1958) the Court held that Art. 6.04, Elec-
tion Code, was the law governing the situation, and ruled that
Mr. Love who had been selected by the District Committee was
the Democratic nominee, and not Mr. Krichamer, who had been
selected at the state convention.

The case of Williams v. Huntress, 153 Tex. 443, 272 S.W.2d
87 (1954) presented another situation not covered by statute.
A new court had been created, the Special 37th District Court
of Bexar County. By the terms of the statute creating the court,
such court did not come into existence until September 1, 1954.
Mr. Spears was selected by the Democratic County Convention to
be the nominee, and Mr. Williams was selected by the Democratic
State Convention to be the Democratic nominee for such office.
The Court stated at page 88:

> ". . . We have found no statute
> specifically placing the power of
> appointment for a district office
> where the need for appointment arises
> from the fact that a new office has
> been created in such a fashion that
> the nominee is not selected at the
> regular primary.
>
> "The law is settled that where
> the legislature has not specifically
> regulated party affairs, the party
> itself has the right to prescribe
> rules and regulations governing it-
> self. . . .
>
> ". . ."

> "We hold that in this situation
> the State Convention had the power
> to select a candidate for district
> office and that it legally exercised
> that power.  It seems to be uncontro-
> verted that relator does have a regu-
> lar certificate of nomination from
> the State Democratic Convention."

The Court ruled in favor of Mr. Williams, who had been selected
as the Democratic nominee by the Democratic State Convention.

While we find no case in which the State Convention of a
party has selected a nominee for an office, which is purely of
a county or precinct nature, nevertheless, we are of the opinion
that the following conclusions may be drawn from the above cases:

> 1.  A political party is entitled
> to have a nominee for every office
> which is to be voted on by the people
> at a General Election.

> 2.  If the Election Code provides
> a method of selecting such party nomi-
> nee, the method provided in the Elec-
> tion Code is exclusive, and must be
> followed; otherwise, there will be no
> party nominee for such office.

> 3.  If the situation is one in
> which there is no applicable law,
> then ". . . the party itself has
> the right to prescribe rules and
> regulations governing itself."

> 4.  The state convention of a
> political party ". . . is the most
> authoritative body of the party
> . . . with respect to the affairs
> of the party within the state . . .
> and has authority to attend to the
> business of the party in such way as
> it sees fit, subject to such regu-
> lations and limitations as have been
> imposed by the statutes."

In answer to your first question, we hold that the various
bona fide political parties have the authority to nominate a

nominee for the office of Assessor and Collector of Taxes of Galveston County, for the unexpired term of the late John H. Oberndorfer, the names of such nominees to be printed in their respective party columns on the General Election ballot in the General Election of November, 1962. Such nominations may be made at the state conventions of such parties.

While it is not necessary to answer your second question in detail, we point out that a method must be provided for voters to express their choice by write-in vote, since the voters are not required to cast their votes for either a party nominee or independent candidates, whose names are printed on the ballot. If the voters prefer someone whose name is not printed on the ballot at all, the will of the voters must prevail. Note the statutory provisions authorizing write-in votes for paper ballots in Art. 6.06, Election Code, and for voting machines in Sec. 16, Art. 7.14, Election Code.

## S U M M A R Y

Where a County Tax Assessor-Collector died in office in the middle of his term, during an election year when he was not required to run, after the party primary election has been held, but prior to the General Election to be held that year, there being no applicable statutes in the Election Code governing such a situation in the case of a county office, the various bona fide political parties have the authority to nominate nominees for such office, the names of such nominees to be printed in their respective party columns on the General Election ballot as candidates for the remainder of the unexpired term of such office. Such nominations may be made at the state conventions of such parties.

A method must be provided for voters to express their choice by write-in vote, since the voters are not required to cast their votes for either a party nominee or independent candidates, whose names are printed on the ballot. If the voters prefer someone whose name is not printed on the ballot at all, the will of the voters must prevail.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Riley Eugene Fletcher*
Riley Eugene Fletcher
Assistant

REF:rk

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

L. P. Lollar
Sam Stone
Grady Chandler

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore