**Manuel BEJARANO, Relator,**

v.

**Carole HUNTER, City Clerk, Respondent.**

**No. 08–95–00109–CV.**

Court of Appeals of Texas, El Paso.

April 27, 1995.

Michael R. Gibson, El Paso, for relator.

Laura P. Gordon, Asst. City Atty., El Paso, for respondent.

Victor M. Firth, Mounce & Galatzan, El Paso, for real-party-in-interest.

### OPINION

In this original proceeding in mandamus relator Manuel Bejarano, a candidate for El Paso city council, district 6 in the May 1995 election, requests that we order the El Paso city clerk to remove the name of his opponent, Barbara Perez, from the ballot.[1] We find that although candidate Perez's petition in lieu of filing fee is insufficient on its face, the start of early voting has mooted the controversy. We therefore deny mandamus relief, ordering that both candidates remain on the ballot.

### ANARCHY IN E.P.

This controversy results from the El Paso city clerk's conscious decision to ignore the requirements of state law and of the city charter, coupled with a candidate's apparent indifference to her own responsibility under those laws. Arrogance, ineptness, confusion, and carelessness have combined here to needlessly complicate the electoral process. Gamesmanship, although encompassing valid legal strategy, has compounded the difficulty and precluded the remedy relator seeks. The undisputed facts follow.

Barbara Perez is the incumbent in the race for El Paso city council, district 6 (the lower valley district). On February 20, 1995, the first day for filing as a candidate in the May 1995 city election, she filed her application for a place on the general election ballot with city clerk Carole Hunter. Rather than pay the $250 filing fee, Perez filed a petition in lieu thereof. Her petition included forty-seven signatures, only seventeen of which included the signer's voter registration number along with other identifying information. Each signature was on a form supplied by the Texas Secretary of State; the top of each page contained blanks for the appropriate candidate's name, the office sought, and the election date. Despite clear instructions accompanying the forms that this information *must* be filled out for each page of signatures obtained, of seven pages containing signa-

---

1. Although the relief relator requests is that the city clerk be "directed ... to remove the Real Party In Interest's name from the 1995 El Paso General Election Ballot," we believe the ministerial act which the clerk may perform is actually that of declaring the candidate's application for office insufficient. EL PASO CITY CHARTER § 2.2(D).

Such a declaration would presumably require removal of the would-be candidate's name from the ballot. Because of the outcome we reach in this case, we do not address the question of whether Bejarano's petition properly requests relief directed against a party that can perform it.

tures in Perez's petition only two were completed.

City clerk Hunter accepted Perez's application, and certified her name to be placed on the 1995 city election ballot. By the clerk's own admission, she did not require that Perez's petition include the voter registration numbers of its signatories; neither did she require that signature pages include the completed declaration that the signatory knew the purpose for which he or she signed. In her affidavit before this Court, Hunter stated that she did not require such information because:

> There is no requirement in the Charter or state law that the candidates [sic] name be at the top of every page, although the form states that such information should be filled in.
>
> . . . . .
>
> I informed Ms. Perez and other similarly situated candidates for city office that their petitions, which did not contain voter registration numbers, complied with the City Charter. I did so using my discretion as the City Clerk in determining the validity of the petition.
>
> If I believed that voter registration numbers were required, I could have filled those in. In fact, one candidate for a city representative position, Jesus Terrazas, requested that I give him access to the voter registration ballots so that he could fill in the voter registration numbers. I informed Mr. Terrazas that he did not need that information and that I could verify the signatures without that information. I have been accepting petitions without voter registration numbers for several years.
>
> In my opinion, the requirement that voter registration numbers be placed on a nominating petition is a superfluous and unnecessary requirement....

The filing period for city elections closed on March 22, 1995. One other candidate, Manuel Bejarano, filed an application to run for the lower valley seat. On March 23,

1995, Hunter certified both candidates to be placed on the ballot. Also on March 23, Bejarano obtained a copy of Perez's petition. On March 24, his lawyer sent clerk Hunter a letter informing her that he believed Perez's petition was insufficient. Hunter made no reply to this letter. On April 7, 1995, the period to file as a write-in candidate expired. That day, Bejarano filed a mandamus action against the city clerk in the 171st District Court of El Paso County, asking that Perez's name be removed from the ballot.

Candidate Perez obtained counsel and a number of legal maneuvers ensued in the district court. Perez attempted removal to federal district court, with remand the same day; the sitting judge was disqualified;[2] the presiding judge quickly appointed a visiting judge; Perez exercised a strike of that judge under Tex.Gov't Code Ann. § 74.053 (Vernon Supp.1995); the presiding judge appointed a second visiting judge, and scheduled the case for hearing on April 14, 1995 (which was both Good Friday and the last working day before the beginning of early voting). Bejarano requested mandamus against the regional presiding judge from this Court on April 13, asking that the district court be ordered to hold an immediate hearing. We denied mandamus on the grounds that any action by the district court would be void, as it possessed no jurisdiction over a challenge to a ballot application. Tex.Elec.Code Ann. § 273.061 (Vernon 1986). On Friday, April 14, 1995 at approximately 9 a.m., Bejarano filed in this Court another motion for leave to file a petition for writ of mandamus, this time against the El Paso city clerk, Carole Hunter. He did not serve the city attorney or real-party-in-interest Perez until 11:28 a.m. This Court granted leave to file, requested full briefing by all parties to be submitted by Monday, April 17, and scheduled oral argument for Tuesday, April 18, 1995. Argument from relator Bejarano, the City of El Paso, and real-party-in-interest Perez was heard by this Court en banc on that date.

---

**2.** Judge Peca apparently disqualified himself under the belief that this was an election contest proceeding under Tex.Elec.Code Ann. § 221.001 (Vernon Supp.1995), which does require that a judge from another jurisdiction be appointed to hear the contest. Tex.Elec.Code Ann. § 231.004 (Vernon 1986). This proceeding is not an election contest, however, and remedy is by mandamus to the appellate courts.

## JURISDICTION

 As a threshold matter, we note that jurisdiction to compel an election officer to remove a candidate's name from the ballot is vested in the appellate courts. The Texas Election Code provides:

> The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer. TEX.ELEC.CODE ANN. § 273.061 (Vernon 1986).

Numerous mandamus cases in the appellate courts have addressed the very issue before us here: whether an application for a place on the ballot must be rejected because the petition in lieu of filing fee was defective. *See Strachan v. Lanier*, 867 S.W.2d 52, 53 (Tex.App.—Houston [1st Dist.] 1993) (orig. proceeding); *Cohen v. Strake*, 743 S.W.2d 366, 367 (Tex.App.—Houston [14th Dist.] 1988) (orig. proceeding); *Gray v. Vance*, 567 S.W.2d 16, 17 (Tex.Civ.App.—Fort Worth 1978) (orig. proceeding). While appellate courts have no ability to resolve factual disputes in a mandamus action, where a petition is lacking on its face, we may issue mandamus ordering a certifying official to reject the would-be candidate's application. *Strachan*, 867 S.W.2d at 53. Thus, if Perez's petition is fatally incomplete on its face as Bejarano suggests (and absent other complicating factors), we have jurisdiction to grant mandamus here.

### THE CITY CLERK'S DUTIES

 The Texas Election Code allows a home-rule city, such as El Paso, to establish its own requirements for ballot place applications in city elections. TEX.ELEC.CODE ANN. § 143.005 (Vernon Supp.1995). Although the city has established its own rules through the city charter, the requirements for a petition in lieu of filing fee are almost identical to those required under state law.[3] *Compare* TEX.ELEC.CODE ANN. § 141.063(2) (Vernon 1986) *with* EL PASO CITY CHARTER § 2.2(E). A candidate for city office may secure a place on the ballot by filing an application for a place on the general election ballot and paying a $250 filing fee. EL PASO CITY CHARTER § 2.2(D). A candidate may avoid the filing fee by filing a petition in lieu thereof containing twenty-five valid signatures along with the application. TEX.ELEC.CODE ANN. §§ 141.062–141.065 (Vernon 1986); EL PASO CITY CHARTER § 2.2(E). Statutory requirements concerning candidacy for public office are mandatory, and must be strictly construed to ensure compliance. *Wallace v. Howell*, 707 S.W.2d 876, 877 (Tex.1986); *Jones v. Mather*, 709 S.W.2d 299 (Tex.App.—Houston [14th Dist.] 1986) (orig. proceeding); *Gray*, 567 S.W.2d at 17.

Requirements concerning the validity of a petition in lieu of filing fee require that:

(a) To be valid, a petition *must*:

(1) be timely filed with the appropriate authority;

(2) contain valid signatures in the number required by this code; and

(3) comply with any other applicable requirements for validity prescribed by this code.

(b) A petition may consist of multiple parts. TEX.ELEC.CODE ANN. § 141.062 (Vernon 1986) [emphasis added].

A signature on a petition is valid if:

(1) Except as otherwise provided by this code, the signer, at the time of signing, is a registered voter of the territory from which the office sought is elected or has been issued a registration certificate for a registration that will become effective in that territory on or before the date of the applicable election;

---

3. The city charter states that the application shall be filed "in accordance with the laws of Texas," thus referring back to the election code. EL PASO CITY CHARTER § 2.2(D). The charter does differ from the state election code in one important respect: it requires that the voter registration number be completed by the signer, while the state code allows the number to be filled in later, by another person. Perez has challenged the constitutionality of the state code provision, but has not so challenged the city charter provision. We therefore do not address whether the more stringent city charter provision is unconstitutional under *Pilcher v. Rains*, 853 F.2d 334, 336–37 (5th Cir.1988).

(2) the petition includes the following information with respect to each signer:

(A) the signer's residence address;

(B) *the signer's voter registration number* ...

(C) the date of signing; and

(D) the signer's printed name;

(3) the part of the petition in which the signature appears contains the affidavit required by Section 141.065;

(4) each statement that is required by this code to appear on each page of the petition appears, at the time of signing, on the page on which the signature is entered; and

(5) any other applicable requirements prescribed by this code for a signature's validity are complied with. TEX.ELEC.CODE ANN. § 141.063 (Vernon 1986) [emphasis added].

The city clerk's responsibilities are likewise outlined in both the election code and the city charter. Again, under the two laws her duties are identical in almost every respect. Under the city charter:

> Within five days after the filing of a nominating petition, the City Clerk *shall* notify the candidate and the person who filed the petition, if other than the candidate, whether it satisfies the requirements prescribed by this Charter. If a petition is found insufficient, the City Clerk *shall* return it immediately to the person who filed it with a statement certifying wherein it is insufficient. EL PASO CITY CHARTER § 2.2(E) [emphasis added].

We find that the city clerk's duty to apply the statutory requirements to all applications, and reject those that are insufficient, is ministerial. The clerk possesses no discretion to ignore or amend either the city charter or state election law. Nevertheless, the city clerk has averred that she decided voter registration numbers were "superfluous and unnecessary," and that she would not require them on candidate applications. Similarly, she has wholly ignored the requirement that

each page of a petition bearing signatures contain, at the time of signing, the candidate's name, office sought, and election date.[4] Accordingly, having disregarded the law because it did not suit her own notion of what a petition should contain, the city clerk accepted Perez's application and petition, and certified her name to be placed on the ballot. This she had no discretion to do; she was required by the state and city laws to inform Perez that her application was insufficient, and return it to her within five days of receiving it. Had the clerk complied with her ministerial duty, Perez would have had ample time to correct the deficiencies and file a new application before the filing deadline. Failing to perform that duty, the clerk set the stage for a completely avoidable comedy of errors.

In the event that we have not made our holding in this matter sufficiently clear, we restate it: compliance with state election laws and the city charter is mandatory. The clerk's duty to reject all insufficient applications for a place on the ballot is ministerial. Perez's petition in lieu of filing fee was insufficient as a matter of law, and city clerk Hunter was required to reject it. Failure to perform her duty subjects Hunter to mandamus. TEX.ELEC.CODE ANN. § 273.061 (Vernon 1986).

### THE CANDIDATE'S RESPONSIBILITIES

Having concluded that the city clerk deliberately declined to perform ministerial duties required of her by both the election code and the city charter, we turn now to the comportment of the candidate Barbara Perez. First, we emphasize that it is the *candidate*, not the city clerk, who is primarily responsible and accountable for properly completing and timely filing her election application, including the petition if she elects not to pay the $250 filing fee (a decision this candidate no doubt deeply regrets in hindsight). Although the city clerk is charged with reviewing the application, in the end it is the candi-

---

**4.** Although the election code does not specifically recite this requirement, we find that the provisions of TEX.ELEC.CODE ANN. §§ 141.063(4), 141.064, 141.065(1), and 141.066(a) (Vernon 1986) imply that each petition page must contain this information at the time each signature is obtained.

date who must insure that it complies with the state and local law. If she does not, she is at risk of having her candidacy rejected; if not by the clerk, then by the court if an enterprising opponent seeks her removal from the ballot. It is the candidate's responsibility because it is the candidate's name that will (or will not) appear on the ballot.

Here, it is manifest that the petition submitted by Perez did not comply with the law. Most signatories failed to supply their voter's registration numbers, which are required under both the present election code and city charter. A candidate for city council wishing to avoid a filing fee must obtain twenty-five signatures with voter's registration numbers, here from among 68,000 constituents. Perez may find this requirement oppressive and arbitrary. If so, she had two alternatives: pay the $250 filing fee, or challenge the constitutionality of the requirement in court. She did neither.

Second, we turn to what we find to be Perez's far more serious omission: her failure to complete the statement at the top of each page of signatures, *before* asking voters to sign.[5] Although Perez signed the required circulator's affidavit, which states that she "called each signer's attention to the above statements and read them to him [sic] before the signer affixed his [sic] signature," for most pages of her petition this affirms only that she read a statement which was missing all the crucial information a voter needed before signing. We cannot assume that the circulator supplied information missing from the face of the petition itself. A voter may sign only one petition per electoral office. Informing voters of the name, electoral race, and election which they are choosing to so endorse is a vital part of the petition process. Failing to do so risks confusion (at best) and deception (at worst). A voter should never be asked to sign a blank endorsement; by doing so he or she gives up a right, and should be asked to do so only in a way that reflects a knowing choice. Thus, the declaration at the top of each petition page is not a mere technicality, nor a hurdle

serving no real purpose: it serves a purpose important to its *signatories*, informing them in writing of the candidate for whom they sign, and of those candidates for whom they cannot sign henceforth. A small but significant civil right is relinquished; this is not trivial, and the challenge of such an omission cannot be shrugged off as merely technical. The candidate *must* provide her supporters with this information.

### MOOTNESS

 Although we conclude that the controversy between these individual parties became moot with the beginning of early voting, we have addressed its merits because it falls within a classic category of cases which are an exception to the mootness doctrine: those capable of repetition yet evading review. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Pilcher v. Rains*, 853 F.2d 334, 335 n. 1 (5th Cir.1988). The "capable of repetition yet evading review" exception applies where the act challenged is of such short duration that meaningful review cannot be obtained before the issue becomes moot. *General Land Office v. OXY U.S.A.*, 789 S.W.2d 569, 571 (Tex.1990); *Click v. Tyra*, 867 S.W.2d 406, 408 (Tex. App.—Houston [14th Dist.] 1993) (orig. proceeding). In addition, there must be a reasonable expectation that the same action will occur again if not addressed. *Click*, 867 S.W.2d at 408. Given the city clerk's longstanding refusal to comply with the law, together with her sworn statements that a declaration of the petition's purpose is not required and voter registration numbers are "superfluous and unnecessary," we find this matter is capable of repetition.

Although candidates for city office have apparently been submitting insufficient applications for ballot placement for years, and the clerk has been approving them for just as long, this is the first legal challenge to these practices. The tight time constraints for bringing a challenge, and the two-year election cycle, create only a fleeting opportunity for appellate review. We therefore conclude

---

**5.** The declaration read: "Signing the petition of more than one candidate for the same office in the same election is prohibited." "I know that the purpose of this petition is to entitle _____ to have his [sic] name placed on the ballot for the office of _____ for the _____ election."

352

that this matter also meets the "evading review" requirement. We may rarely determine the merits of a controversy where they will no longer effect the outcome of the particular dispute before us; this is one of those rare times. Thus, although we find that Perez's petition was insufficient, and that the clerk failed to perform her ministerial duty of rejecting her application, we also find that her name should not be stricken from the ballot, as early voting has already begun.

The last day for challenging a candidate's ballot application is the day before the beginning of absentee voting by personal appearance (early voting) for the election for which the application is made. TEX.ELEC.CODE ANN. § 141.034 (Vernon Supp.1995). Here, early voting began April 17, 1995. Relator properly invoked the mandamus jurisdiction of this Court for the first time on April 14, 1995 (Good Friday), three days (two of which were Passover and Easter) before early voting began.[6] This Court could not afford all parties time to fully brief the issues, nor could we properly consider the issues after briefing, before early voting began. Bejarano never requested a stay of early voting, which might have preserved the possibility of striking Perez's name from the ballot before voting began. Once the first early vote was cast with Perez's name as a candidate for city council, any order altering the ballot would interfere with the orderly process of the election. See Smith v. Crawford, 747 S.W.2d 938, 940 (Tex.App.—Dallas 1988) (orig. proceeding).

 The only relief Bejarano has requested of this Court is that Perez be removed from the ballot. A case becomes moot "when any right which might be determined by the judicial tribunal could not be effectuated in the manner provided by law." Smith, 747 S.W.2d at 940. Where voting has begun, we believe the rights of the voters to an accurate, reliable ballot must override Bejarano's right to challenge his opponent's in-

sufficient application for a place on that ballot. The requested relief in this particular case is therefore moot and we cannot grant it, even where there is good cause for the challenge. See id.; Price v. Dawson, 608 S.W.2d 339, 340 (Tex.Civ.App.—Dallas 1980, no writ); Tafolla v. City of Uvalde, 428 S.W.2d 486, 487 (Tex.Civ.App.—San Antonio 1968) (orig. proceeding); Cummins v. Democratic Executive Committee of Lampasas County, 97 S.W.2d 368, 369 (Tex.Civ.App.— Austin 1936, no writ).

## CONCLUSION

This controversy is thick with allegations and accusations that the provisions of the election code and city charter are merely hypertechnical, archaic rules intended to prevent fair access to the ballot. We unanimously disagree. The purpose of meticulous adherence to the law is not to deprive willing candidates from their place on the ballot; the purpose is to ensure equal treatment of all candidates and to protect voters from fraud. Elected officials serve at the pleasure of the voting public and it is the rights of voters which must be vigorously preserved. Although there is no hint of fraud or deception in this case, and we imply none, we cannot analyze the purpose of the rules in a vacuum. We speak not to the merits or capabilities of either contender in the race before us. Instead, we must inspect the voting process in the wider context of overall fair elections. If the election officers of this state are accorded broad discretion in accepting insufficient petitions for one candidate in one election, that discretion also allows them to refuse insufficient petitions for another candidate which may be viewed by that clerk, for political or personal reasons, as an undesirable candidate. There is no constraint on this power if clerks are granted authority to interpret the law at their whim. No clerk is justified in stating, under oath, that she has determined an election requirement is "superfluous and

6. Bejarano strategically waited for the expiration of both the filing deadline for ballot position and write-in candidacy before commencing his legal challenge. His clear purpose was to prevent Perez from curing her errors. This decision resulted in insufficient time for this Court to act. Bejarano filed his petition on the last possible working day, he then inexplicably waited two and one-half more hours before serving notice on the City of El Paso and his opponent. Having chosen to wait until his opponent could not cure her petition, he must accept the consequences of that choice.

unnecessary." Imagine the outrage if a clerk disallowed a petition lacking voter registration numbers in the handwriting of the signatory, as required by the city charter, while the same clerk accepted the opponent's petition and offered to fill in the voter registration numbers as authorized by the election code. Such discretionary application of the rules invites discrimination. And while we note that in the record before us, the city clerk has treated all candidates equally, the very fact that she believes herself free to interpret the election laws as she sees fit demonstrates the potential for abuse.

Further, the caption at the top of each signature page of a petition has an important purpose in protecting the voter. A failure to apprise the signatory of the name, ballot position, and election date of the candidate for whom support is sought can lead to chaos. Suppose an unscrupulous candidate omits the notice or leaves blank the declaration of the candidate's name and position sought, to find at the end of a successful day she has more than enough names to ensure a ballot position. What prevents that candidate from giving (or selling) her extra signatures to another candidate for another office? This possibility leads us to the conclusion that the rules were designed for a cogent and necessary purpose; they are neither hypertechnical nor archaic. While we recognize that the voters want to choose among the full range of qualified candidates, and that many may view this challenged process as an interference with that right, we caution that without this process, meaningful safeguards are abandoned. Democracy requires a fair election; that requirement is not a technicality. We cannot allow rules designed to protect the process to be ignored at the whim of an individual.

We have determined the merits of this action because the circumstances here meet the "capable of repetition yet evading review" exception to the mootness doctrine. We deny Bejarano's requested relief, as the inception of early voting rendered this particular controversy moot. Both candidates will remain on the ballot, and the voters may choose between them, having been fully in-

formed of each actor's contribution to this electoral free-for-all.

The Court will entertain no motions for rehearing.