In re Tasso **TRIANTAPHYLLIS,**
Relator.

No. 14–02–00065–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 31, 2002.

---

8. Having sustained the City's first issue relieves us of having to address its second.

Michael B. Charlton, Houston, for relator.

Stephen G. Tipps, Amy Maddux, Michael J. Stanley, Houston, for respondents.

Panel consists of Justices FOWLER, EDELMAN, and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

In this original proceeding, relator, Tasso Triantaphyllis, the Democratic candidate for the office of Judge of the 270th District Court of Harris County, seeks a writ of mandamus ordering the respondents, Jared Woodfill, Chairman of the Harris County Republican Party, and other party officials[1] to take the following

1. In addition to Woodfill, Triantaphyllis named Madeline Collier, Former Acting Chairman of the Harris County Republican Party, Iris Manes, Secretary for the Harris County Republican Party, Kathy Haigler, Primary Director for the Harris County Republican Party, Harris County Republican Party Executive Committee, and Harris County Re-

action: (1) refuse and/or refrain from certifying for placement on the 2002 general primary election ballot the name of the real party in interest, Brent Gamble, as a candidate for the office of Judge of the 270th District Court; (2) remove Judge Gamble's name from the list of candidates; and (3) remove, exclude, and/or omit Judge Gamble's name from the ballot. The issue we must decide is whether a candidate who filed a defective application early, but was not timely notified of the defect by the party chair, had an equitable right to amend his application after the filing deadline. Finding no provision in the Election Code and no case law that would allow such equitable relief, we conditionally grant the writ.

## I. BACKGROUND

The real party, Judge Gamble, is the presiding judge of the 270th District Court in Harris County. On December 19, 2001, Judge Gamble filed his application to have his name placed on the Republican primary ballot. He stated that the office sought was "Judge, 190th Civil Dist. Court." Judge Gamble asserts that it was his intention to file for reelection to the bench he currently holds, and "District Judge, 270[th] Judicial District" is correctly identified on the petitions accompanying his application. On January 3, 2002, the day after the filing deadline, Kathy Haigler, Harris County Republican Party Primary Director, notified Judge Gamble that she planned to remove his name from the party's candidate list as a candidate for judge of the 270th District Court because

his application was for judge of the 190th Court.

On January 9, 2002, Judge Gamble filed an original petition and request for a temporary restraining order (TRO) in the 55th District Court in Harris County against Iris Manes, Harris County Republican Party Secretary, and Haigler. *See* TEX. ELEC. CODE ANN. § 273.081 (Vernon 1986) (allowing person harmed by violation of Election Code to seek appropriate injunctive relief). Triantaphyllis was not a party to the suit. In support of his request for a TRO, Judge Gamble submitted his own affidavit, affidavits from Haigler and his political consultant, Heidi Lange, and various exhibits, including the petitions that he obtained containing signatures supporting his candidacy for 270th District Judge. This evidence showed that Lange prepared the application form, but she inadvertently wrote "190th District Court" after completing the application of another client who held that office. Without noticing the error, Judge Gamble signed the application.[2] The district court granted a TRO on January 9, 2002, ordering the secretary and primary director of the Harris County Republican Party to refrain from omitting Judge Gamble's name as a candidate for judge of the 270th District Court from the list of candidates required to be submitted by January 12, 2002 pursuant to section 172.029 of the Election Code. The court further ordered that Judge Gamble be allowed to correct his application. Judge Gamble filed a corrected application the day after the TRO issued. On January 14, 2002, the Harris County Republican Party chair prepared the list of candidates, which

publican Party Primary Committee, as respondents. Unless otherwise noted, the respondents will be referred to jointly as "the party chair."

**2.** The application is sworn. The oath Judge Gamble signed states in part, "I, Brent Gamble, of Harris County, Texas, being a candi-

date for the office of Judge, 190th Civil Dist. Court, swear that I will support and defend the Constitution and laws of the United States and of the State of Texas.... I further swear that the foregoing statements included in my application are in all things true and correct."

included Judge Gamble as a candidate for the 270th District Court, and delivered it to the Secretary of State.

On January 18, 2002, Judge Gamble filed a notice of nonsuit of his district court action after his name was included in the list of candidates for judge of the 270th District Court. Triantaphyllis filed this original proceeding on January 18, 2002. He also attempted to file a petition in intervention in Judge Gamble's lawsuit on January 19, 2002, but because of the nonsuit, it was filed too late to allow him to contest or appeal the district court's action.

## II. MANDAMUS POWER

 First, we address whether a mandamus is the appropriate remedy for Triantaphyllis to remove Judge Gamble's name from the list of candidates on the primary ballot. Judge Gamble maintains that Triantaphyllis must bring an action in district court and then appeal any adverse ruling, or that he should have timely intervened in Judge Gamble's lawsuit. We read the Election Code differently. Our reading of the Texas Election Code and the case law leads us to conclude that this Court has jurisdiction to issue a writ of mandamus in this proceeding. *See* TEX. ELEC. CODE ANN. § 273.061 (Vernon 1986) ("The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer."). The same rules pertaining to all original proceedings in this Court apply here. TEX. ELEC. CODE ANN. § 273.062 (Vernon 1986). We have mandamus power to direct a party official to perform his duty correctly. *Escobar v. Sutherland,*

917 S.W.2d 399, 411 (Tex.App.—El Paso 1996, orig. proceeding).

Judge Gamble asserts that this mandamus action is an impermissible collateral attack on the ruling by the trial court. Case law from the Texas Supreme Court refutes this claim. In a similar situation, the Texas Supreme Court ruled that an injunction proceeding to keep a candidate's name off the ballot was rendered moot by the lack of time for normal appellate review. *Williams v. Huntress,* 153 Tex. 443, 272 S.W.2d 87, 89 (1954). Therefore, the injunction was subject to collateral attack by mandamus. *Id.* Here, even if an appellate remedy were available, it would also be inadequate due to time constraints. *See Law v. Johnson,* 826 S.W.2d 794, 796–97 (Tex.App.—Houston [14th Dist.] 1992, no pet.) (finding accelerated appeal of denial of injunction was moot because absentee voting had already begun). Triantaphyllis has no remedy by appeal in this situation. The district court's order was a temporary restraining order that expired by operation of law fourteen days after its issuance. *See* TEX. R. CIV. P. 680. Furthermore, Judge Gamble filed a nonsuit before a temporary injunction was issued, precluding appellate review. To accept Judge Gamble's argument would foreclose any review of the actions of the party officials in this case. Accordingly, we reject the argument and conclude we have the power to direct respondents to comply with their statutory duty if they have not done so.

## III. APPLICABLE LAW

 Next, we turn to the applicable law to determine the various rights, responsibilities, and consequences for noncompliance the Code places on the parties before us. The Texas Supreme Court has emphasized that the sections of the Election Code dealing with candidacy for politi-

cal office are mandatory and are to be strictly enforced. *Wallace v. Howell,* 707 S.W.2d 876, 877 (Tex.1986) (orig. proceeding). The Code contains a number of requirements with which the candidate must comply. "To be entitled to a place on the general primary election ballot, a candidate must make an application for a place on the ballot." TEX. ELEC. CODE ANN. § 172.021 (Vernon Supp.2002). The application must identify the office sought, "including any place number or other distinguishing number." TEX. ELEC. CODE ANN. § 141.031 (Vernon Supp.2002). A candidate must comply with *all* statutory requirements to be entitled to have his name on the ballot. *Brown v. Walker,* 377 S.W.2d 630, 632 (Tex.1964) (orig. proceeding). The deadline for filing an application is 6:00 p.m. on January 2. TEX. ELEC. CODE ANN. § 172.023 (Vernon Supp.2002). The Code contains no provision permitting deficiencies in applications to be corrected after the filing deadline. The consequence for the failure to file an application that complies with the Code requirements is omission from the list of names to appear on the ballot. TEX. ELEC. CODE ANN. § 172.029(d) (Vernon Supp.2002). Thus, if a candidate's application is defective and is not timely amended, that candidate's name may not appear on the ballot.

The Election Code also requires certain actions of the party officials responsible for accepting ballot applications. Within five days after filing, the county chair "shall review the application to determine whether it complies with the requirements as to form, content, and procedure that it must satisfy for the candidate's name to be placed on the ballot." TEX. ELEC. CODE ANN. § 141.032(a) (Vernon Supp.2002). If the application does not conform to the mandated requirements, then the chair must "reject the application and immediately deliver to the candidate written notice of the reason for the rejection." TEX.

ELEC. CODE ANN. § 141.032(e) (Vernon Supp.2002). We have not found a consequence in the Code for the party chair's failure to detect errors in an application soon enough to allow correction by the candidate. However, the Code does provide for an injunction to be brought by a person who is being harmed by a violation of the Code. TEX. ELEC. CODE ANN. § 273.081 (Vernon 1986).

In short, the Election Code places responsibilities on both the candidate and the party chair. Furthermore, it provides for a consequence if the candidate does not follow the Code.

## IV. ANALYSIS

### A. The Effect of Judge Gamble's Defective Application

█ Everyone agrees that Judge Gamble's application filed on December 19, 2001 did not meet the statutory requirements to place Judge Gamble's name on the primary ballot as a candidate for the office of Judge of the 270th District Court. The application named the wrong office. This is not a minor defect. The error was open and obvious. In such a case, the Code's unequivocal mandate is that Judge Gamble's name should be removed from those to be included on the ballot. TEX. ELEC. CODE ANN. § 172.029(d) (Vernon Supp.2002); TEX. ELEC. CODE ANN. § 141.032(e) (Vernon Supp.2002)

### B. The Effect of the Party Chair's Failure to Notify the Candidate of the Defect

█ Judge Gamble admits that his application mistakenly contained the wrong court number, but he points out that the county chair did not comply with its statutory duties, specifically, the county chair did not review the application within five days and notify him of the error. So, the

question before us is, does the party chair's failure to timely notify the candidate of a defect in the application create an equitable right in favor of the candidate to be placed on the ballot? The Code does not directly address this question. However, case law has addressed it, and we believe the Code contains indirect guidance on the issue.

First, we discuss the case law. Even when the chair fails to review an application as required under section 141.032 of the Election Code, courts have nonetheless placed the burden on the candidate to ensure that the application complies with established law.[3] *Escobar*, 917 S.W.2d at 404;[4] *see In re Gibson*, 960 S.W.2d 418, 421 (Tex.App.—Waco 1998, orig. proceeding) (ordering removal of candidate's name, after refusing to shift responsibility to party official for failing to discover error, where office was left blank on application); *see also Brown*, 377 S.W.2d at 632 (granting mandamus to remove candidate who mailed fee to party chairman by regular mail instead of certified mail, as statute required, even though he followed chairman's instructions); *Jones v. Mather*, 709 S.W.2d 299, 300 (Tex.App.—Houston [14th Dist.] 1986, orig. proceeding) (failing to excuse late filing despite party official's failure to publish required notice of extension of filing deadline); *Leach v. Fischer*, 669 S.W.2d 844, 847 (Tex.App.—Fort Worth 1984, orig. proceeding) (charging candidate who relied on erroneous statements from party officials with knowledge of election code provisions). The case law has placed the ultimate burden for the application's compliance on the person who has the most vested interest in the outcome—the candidate. It is the candidate who is accountable if a proper application is not timely filed. *Bejarano v. Hunter*, 899 S.W.2d 346, 351 (Tex.App.—El Paso 1995, orig. proceeding). "This accountability is not for the *intentions* but for the *deed*." *Escobar*, 917 S.W.2d at 404 (emphasis added).

Second, as we have noted, in connection with the balloting process, the Code requires both the candidate and the party chair to do certain things. To obtain a place on the ballot, the candidate is responsible for filing an accurate and compliant application. The party chair is responsible, within five days of receiving an application, for reviewing the application for defects. Here, neither the candidate nor the party fulfilled their responsibilities. Yet, the legislature chose to impose a consequence on only the candidate for his failure to file an error-free application. The Code contains no consequence for the party chair's failure to review an application. For example, it does not state that if the party chair fails to do its job, a candidate's name must be placed on the ballot. This decision by the legislature to penalize one omission and not the other reflects the legislature's view as to which is the greater responsibility and what the result must be.

In summary, we conclude that the party chair's failure to timely discover the defect does not override the candidate's own neglect and entitle the candidate to correct

---

**3.** Triantaphyllis does not concede that the party chair did not perform the duties. He points out she looked at the application, but not carefully, because she knew which office Judge Gamble was applying for.

**4.** *Escobar* recognizes a purpose of *Section* 141.032 is to protect the candidate, by allow-

ing an early filer to amend, or allowing a deadline filer the maximum time to seek a judicial remedy. 917 S.W.2d at 406. Nonetheless, *Escobar* places the primary responsibility for the accuracy of the application on the candidate. *Id.* at 404.

his application after the filing deadline and to have his name placed on the ballot.[5] Here, when both the candidate and the party chair have failed to carry out their responsibilities, the greater responsibility is for the candidate to ensure that his own application is correct.

## C. The Purposes of the Election Code

Our review of the purposes of the Election Code also compels us to reach the conclusion that a candidate who files a defective application and fails to correct it by the filing deadline cannot have his name placed on the ballot. The 1997 amendments to the Election Code were made to correct inconsistencies in applying the Code, to provide for more efficient operations of elections, and to preclude voter fraud. *See* SENATE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 331, 75th Leg., R.S. (1997); HOUSE COMM. ON ELECTIONS, BILL ANALYSIS, Tex. H.B. 331, 75th Leg., R.S. (1997).

■ While there is no allegation of fraud in this case, the purpose of precluding fraud on the voters cannot be furthered by permitting a candidate to have a place on the ballot when his application does not comply with the Election Code. The potential for fraud arises where a candidate is permitted to obtain a place on the ballot after filing an application for a different office than that for which he obtained petition signatures. "The purpose of meticulous adherence to the law is not to deprive willing candidates from their place on the ballot; the purpose is to ensure equal treatment of all candidates

and to protect voters from fraud." *Bejarano*, 899 S.W.2d at 352.

There is no dispute here that the purpose of requiring a timely filed application identifying the office being sought is to provide notice to the party, other potential candidates, and the public. The "object sought to be obtained" in the Code's application requirements is to identify the office for which the candidate is filing. It is "just and reasonable" in light of that object to require all candidates to bear the burden of filing a correct application. To do otherwise and permit correction of an application after the filing deadline would open the entire balloting process to the potential for inconsistency, uncertainty, delay, and fraud. Because the early voting deadline follows very quickly on the heels of the filing deadline, the Code has provided for a relatively speedy remedy—injunction—if a person is being harmed by a violation of the Code or being improperly left off the ballot. Election contests would abound and would be prolonged if courts were required to determine whether an error was an honest mistake or purposeful. Thus, by refusing to look to the intent of the filer, we further the purposes of the Code.

In reaching this result, we have considered the holding in a recent decision from our Supreme Court, *In re Bell*, No. 02–0034, 2002 WL 87074, ── S.W.3d ── (Tex. Jan. 22, 2002) (orig. proceeding). The court departed from the requirement for strict compliance with Election Code's mandatory requirements for candidacy, finding that the omission of the city of residence from a petition signer's address did not undermine the Code's purpose in

---

**5.** It makes sense to place on the candidate the ultimate burden for a compliant application. It is his application and it should be easier for a careful candidate to find any defects. A party chair, on the other hand—especially in a populous county—could have numerous applications and petitions to review in a short period of time. It is reasonable to place the greater burden on the one looking at a single application rather than on the one reviewing many.

requiring the address because there was enough other information to verify voter eligibility. *Id.,* slip op. at 8, —— S.W.3d at ——.

■ The court held that the Election Code must be construed according to the Code Construction Act. *Id.,* slip op. at 3, —— S.W.3d at —— (citing Tex. Elec. Code Ann. § 1.003 (Vernon Supp.2002)). The court emphasized that under the Act, "the Legislature is presumed to have intended a 'just and reasonable result' in enacting statutes." (citing Tex. Gov't Code Ann. § 311.021(3) (Vernon 1998)). In construing the statute, courts may consider the legislative history and "the object sought to be attained." *In re Bell,* slip op. at 3, —— S.W.3d at —— (citing Tex. Gov't Code Ann. § 311.023(1),(3) (Vernon 1998)). Courts may also consider the consequences of a particular construction. Tex. Gov't Code Ann. § 311.023(5).

We are not presented with a situation like that in *Bell* where failure to require strict compliance will not defeat the purpose of the statutory requirements. In *Bell,* the court was faced with a challenge to the petitions, not the application. The court relied on other information contained on the petitions to verify that the voters lived in the applicable precinct and found that inclusion of the city in the voters' addresses was unnecessary. Here, the only documents apart from the application that could possibly be used to show the office sought by Judge Gamble are the petitions. The Election Code plainly and clearly prohibits using the petitions to correct an error in the application. *See* Tex. Elec. Code Ann. § 141.032(c) (Vernon Supp.2002).[6] Moreover, strict compliance is required in this case because, unlike

*Bell,* the relevant Election Code sections use the mandatory term "must." *See* Tex. Elec. Code Ann. § 141.031(4)(C) ("a candidate's application for a place on the ballot that is required by this code *must* ... include the office sought, including any ... distinguishing number,"); and Tex. Elec. Code Ann. § 172.029(d) ("[a] candidate's name *must* be omitted from the list [as a name to appear on the ballot] ... if the candidate's application is determined not to comply with the applicable requirements.") (emphasis added). If the word "must" appears in the Election Code, the section requires mandatory compliance. *Cohen v. Strake,* 743 S.W.2d 366, 368 (Tex. App.—Houston [14th Dist.] 1988, orig. proceeding). More importantly, *Bell* did not suggest that a defect could ever by corrected after the filing deadline. Thus, we conclude that *Bell* does not require a different interpretation of these sections than that afforded by a plain reading of them.

### D. The Party Chair's Mandatory Duty

■ Finally, having determined it was Judge Gamble's responsibility to file a correct application, we turn to the remedy Triantaphyllis seeks. First, we consider whether Judge Gamble can amend his application after the filing deadline. Judge Gamble filed a second application listing the correct office on January 10, 2002, after the January 2 filing deadline. Deficiencies in applications may not be corrected after the filing deadline. *See Jaime v. Patlan,* 709 S.W.2d 334, 336 (Tex.App.—San Antonio 1986, orig. proceeding) (candidate did not file application until filing deadline and thus had no opportunity to amend or refile after time for filing expired). Likewise, an application filed after

---

6. "[T]he petition is not considered part of the application for purposes of determining compliance with the requirements applicable to each document, and a deficiency in the re-

quirements for one document may not be remedied by the contents of the other document." Tex. Elec. Code Ann. § 141.032(c) (Vernon Supp.2002).

the filing deadline is ineffective. *See Jones v. Mather,* 709 S.W.2d 299, 300 (Tex. App.—Houston [14th Dist.] 1986, orig. proceeding) (denying mandamus seeking to place candidate on ballot who filed one day late); *but see Painter v. Shaner,* 667 S.W.2d 123, 125 (Tex.1984) (granting mandamus to allow late filing due to absence of only person authorized to receive application). We conclude that after the filing deadline passed, Judge Gamble had no right, equitable or otherwise, to amend his application to correct the designation of the office he sought. Having made this determination, we are confronted with the issue of whether mandamus will issue to remove Judge Gamble from the ballot.

▆▆▆ The party chair's duty to determine whether an application for a place on the ballot complies with the statutory requirements is ministerial. *Escobar,* 917 S.W.2d at 405–06. The chair has no discretion to certify a name for placement on the ballot if the application fails to meet these requirements. *Id.* Respondents failed to perform their non-discretionary duties correctly under the Election Code by certifying Judge Gamble's name for placement on the general primary election ballot when he had not filed an application in compliance with the applicable requirements. *See* Tex. Elec. Code Ann. § 172.029(d) (Vernon Supp.2002).[7]

Although appellate courts have no ability to resolve factual disputes in mandamus actions, when, as here, the application is defective on its face, a court of appeals may issue a writ of mandamus ordering the certifying official to reject the would-be candidate's application. *Bejarano,* 899 S.W.2d at 349. Because the party chair failed to omit Judge Gamble's name from the list of candidates delivered to the Secretary of State, mandamus should issue to compel him to omit Judge Gamble's name from the primary ballot as a candidate for the office of Judge of the 270th District Court. *See Gibson,* 960 S.W.2d at 421 (granting mandamus relief where party chair failed to omit name of candidate who had filed a defective application).

## V. CONCLUSION

In short, we see no language in the relevant sections of the Election Code or in the Code Construction Act that would allow Judge Gamble's name added to the list of names approved to be on the ballot. The plain language of the Code requires an application naming the office sought to be filed within the filing deadline. We acknowledge this result may seem harsh, especially for someone who did not act fraudulently. This Court is loathe to see an election decided by a clerical error rather than by the voters. However, the purpose of the Code is to ensure the integrity of our elections, and to do that, it has set forth a number of requirements that must be followed. Ignoring any of those rules and denying the petition for writ of mandamus could undermine the Code's purposes. In the end, it is not unfair to require a candidate who files for office and swears that the application is correct, to bear the consequences for an error in the application.

Accordingly, we conditionally grant the writ and order respondents to do the fol-

---

7. Judge Gamble argues the party chair acted pursuant to the TRO. The purpose of a TRO is to maintain the status quo pending a full hearing on the merits, not to order the complete relief sought by the injunction. *See generally Cannan v. Green Oaks Apts., Ltd.,* 758 S.W.2d 753, 755 (Tex.1988) (per curiam) ("The issuance of a temporary restraining order, like the issuance of a temporary injunction, is to maintain the status quo between the parties."). We are not reviewing the propriety of that TRO or any duty it imposed, but rather the duty imposed by the Election Code, i.e., the ultimate duty.

lowing: (1) to remove Judge Gamble's name from the list of candidates for the office of Judge of the 270th District Court in the 2002 general primary election; and (2) to remove, exclude and/or omit Judge Gamble's name from the 2002 Republican Party general primary ballot as a candidate for the office of Judge of the 270th District Court. *See* TEX. R. APP. P. 52.8(c). The writ will not issue unless respondents do not comply with this opinion.

In view of the time constraints imposed by law for challenges such as these, the Court will entertain no motions for rehearing. *See* TEX. R. APP. P. 2.

CHARLES W. SEYMORE, Justice, concurring.

It is undisputed that one or more of the respondents failed to timely comply with statutorily mandated duties to review the application and immediately give written notice of the reason for rejection. *See* TEX. ELEC. CODE. ANN. § 141.032(a)-(b), (e) (Vernon 1986 & Supp.2002). The real party sought and obtained an appropriate legal remedy from the 55th District Court of Harris County. It is my considered opinion that Judge P.K. Reiter's order fulfilled the legislative intent of a "just and reasonable result" if the focus is solely on a remedy for respondents' failure to timely comply with mandatory provisions in the Election Code. *See In Re Bell,* No. 02–0034, slip op. at 3, 2002 WL 87074, at *2, —— S.W.3d ——, —— (Tex. Jan. 22, 2002) (orig. proceeding). However, I am persuaded by the majority that statutory interpretation which cures injustice to the real party will not further the legislative purpose to ensure equal treatment of all candidates and protect voters from fraud. *See Bejarano v. Hunter,* 899 S.W.2d 346, 353 (Tex.App.—El Paso 1995, orig. proceeding). The Supreme Court, in *Bell,* did

not provide sufficient guidance for application of the Code Construction Act to the facts presented in the instant case. Accordingly, I concur with the opinion of the majority.