In re Jim DUCATO, Relator.

In re Linda Steen, Relator.

In re Robert Cloud, Relator.

Nos. 2–02–009–CV, 2–02–010–
CV, 2–02–011–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 31, 2002.

Ray, Wood & Bonilla, LLP, Doug W. Ray and Randall B. Wood, Austin, for Relators.

Grady L. Swindle, Stephenville, for Real Party In Interest.

Panel A: CAYCE, C.J., HOLMAN and WALKER, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

In these original proceedings, relators Linda Steen, Jim Ducato, and Robert Cloud seek writs of mandamus directing respondent Sharon Crittenden, Chairperson of the Hood County Republican Party, to place their names on the March 12, 2002 primary election ballot for the offices of county judge and county commissioner,

precincts two, and chairman, precinct nine, respectively. We conditionally grant the requested relief.

## JURISDICTION

Jurisdiction to compel an election officer to place a candidate's name on the ballot is vested in the appellate courts. The election code provides:

> The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer.

TEX. ELEC.CODE ANN. § 273.061 (Vernon 1986); *see also id.* § 161.009 ("The performance of a duty placed by this code on an officer of a political party is enforceable by writ of mandamus in the same manner as if the party officer were a public officer."); *Painter v. Shaner*, 667 S.W.2d 123, 124 (Tex.1984) (orig.proceeding) (holding mandamus relief is available to compel party chairperson to place candidate's name on the ballot).

## APPLICABLE STATUTES

To be entitled to a place on the general primary election ballot, a candidate must file a written application and the application must be accompanied by the appropriate filing fee or, instead of the filing fee, a petition containing the signatures of registered voters. TEX. ELEC.CODE ANN. § 172.021(b) (Vernon Supp.2002). The application must be signed and sworn to by the candidate and indicate the date that the candidate swears to the application. *Id.* § 141.031(2).

The authority with whom the application is filed must review the application to determine whether it complies with the requirements as to form, content, and procedure that it must satisfy for the candidate's name to be placed on the ballot. *Id.* § 141.032(a). If the application is accompanied by a petition with voters' signatures, the review must be completed as soon as practicable. *Id.* § 141.032(c). Otherwise, it must be completed within five days. *Id.* § 141.032(b). "If an application does not comply with the applicable requirements, the authority shall reject the application and immediately deliver to the candidate written notice of the reason for the rejection." *Id.* § 141.032(e).

Steen, Ducato, and Cloud each filed their applications with Crittenden. After the filing deadline had passed, Crittenden informed all three candidates that their names would not be placed on the ballot.

## MULTIPLE APPLICATIONS FOR SAME OFFICE

### *Steen*

Steen is the incumbent Hood County Judge. On December 10, 2001, she filed an application to be placed on the March 12, 2002 Republican Primary ballot for that same office. In lieu of paying the filing fee, her application was accompanied by a thirty-seven page petition containing the signatures of registered voters. On twenty-seven of those pages, the petition page failed to state that Steen was seeking a place on the Republican Primary ballot.

On January 2, 2002, the last day for filing an application, Steen filed a second application for the office of Hood County Judge, and this time she paid the $600 filing fee. Crittenden accepted the application and fee that day.

On January 8, 2002, Steen received a letter from Crittenden stating that her name would not appear on the ballot because the nominating petition attached to her original application did not meet the requirements of section 172.027 of the elec-

tion code. Section 172.027 requires the candidate's petition page to identify which political party's primary election she seeks to run in. *Id.* § 172.027.

### Ducato

Ducato is the incumbent Hood County Commissioner for precinct two. On December 12, 2001, he filed an application to be placed on the March 12, 2002 Republican Primary ballot for that same office. In lieu of paying the filing fee, his application was accompanied by a thirteen-page petition containing the signatures of registered voters. On one of the petition pages, Ducato failed to state that he was seeking a place on the Republican Primary ballot. Other petition pages had ineffective affidavits.

On December 28, 2001, Ducato filed a second application for the office of county commissioner, precinct two, and this time he paid the $600 filing fee. Crittenden accepted the application and fee and wrote the word "paid" on the application.

On January 9, 2002, Ducato received a letter from Crittenden stating that his name would not appear on the ballot because the nominating petition attached to his original application did not meet the requirements of section 172.027 of the election code. On that same day, she also returned his second application, on which the word "paid" was crossed out and the word "void" had been added, and returned his check for the filing fee.

### Discussion

Both Steen and Ducato contend that they complied with section 172.021 because they each filed an application and the filing fee before the filing deadline expired.

---

1. Crittenden asserts that a petition cannot be supplemented, modified, or amended on or after the date it is filed. For support, she relies on Tex. Elec.Code Ann. § 277.0023 (Ver-

---

Crittenden takes the position, however, that a candidate cannot file two applications for the same office, and when a candidate does so, any application filed after the first application is void unless the original application was formally withdrawn by the candidate. Thus, according to Crittenden, Steen and Ducato could not cure any defects in their original applications by filing a second application.[1]

The election code is silent about whether a candidate can file more than one application for the same office. It does, however, prohibit a candidate from filing applications for more than one office to be voted on in the same election. Tex. Elec.Code Ann. § 141.033 (Vernon 1986); *Wallace v. Howell*, 707 S.W.2d 876, 877 (Tex.1986) (orig.proceeding). The election code also provides the method by which a candidate may withdraw from an election, Tex. Elec. Code Ann. § 145.001 (Vernon Supp.2002), but it contains no provision concerning the withdrawal of an application.

We are guided by the Code Construction Act when construing the election code. *Id.* § 1.003(a); *In re Bell*, 2002 WL 87074, at *4, —— S.W.3d ——, —— (Tex.2002). The Code Construction Act allows a reviewing court to consider the object sought to be attained, any legislative history, and the consequences of a particular statutory construction. Tex. Gov't Code Ann. § 311.023 (Vernon 1998). Furthermore, the Code Construction Act states that the Legislature is presumed to have intended a "just and reasonable" result in enacting statutes. *Id.* § 311.021(3); *In re Bell*, 2002 WL 87074, at *4, at ——.

■ Election code section 141.032 mandates that Crittenden, as the County

---

non Supp.2002). That code section, however, applies only to applications filed under a law outside of the election code and thus does not apply here. *Id.* § 277.001.

Chair, must review all applications within five days or as soon as practicable and, if she determines that an application does not comply with the statutory requirements, reject the application and immediately deliver written notice to the candidate explaining the reason for the rejection. TEX. ELEC.CODE ANN. § 141.032. The purpose of this statute is two-fold. First, it is designed to protect the candidate who files his or her application early during the filing period by according him or her an opportunity to cure any defect. *Escobar v. Sutherland,* 917 S.W.2d 399, 406 (Tex.App.-El Paso 1996, orig. proceeding). Second, it is also designed to protect the candidate who files at the last possible moment by allowing him or her the maximum period of time in which to seek a judicial remedy. *Id.*

In *Bejarano v. Hunter,* the city clerk ignored her statutory duty to review the applications and, as a result, a candidate did not discover that his opponent's application was defective until after the filing deadline expired. 899 S.W.2d 346, 348 (Tex.App.-El Paso 1995, orig. proceeding). The El Paso Court of Appeals observed that "[h]ad the clerk complied with her ministerial duty, [the candidate] would have had ample time to correct the deficiencies and file a new application before the filing deadline." *Id.* at 350. This court has also acknowledged that a candidate may cure deficiencies with his or her application before the filing deadline expires, but not thereafter. *Gray v. Vance,* 567 S.W.2d 16, 17 (Tex.Civ.App.-Fort Worth 1978, orig. proceeding).

We are mindful that statutory requirements concerning candidacy for public office are mandatory and must be strictly construed to ensure compliance. *Wallace,* 707 S.W.2d at 877; *Bejarano,* 899 S.W.2d at 349. Nevertheless, we cannot construe the statutory requirements so strictly as to lead to unreasonable or unjust results. *See In re Bell,* 2002 WL 87074, at *4, at ——.

Crittenden's interpretation of the "either ... or" language in section 172.021 is unduly restrictive. It would afford a candidate but one opportunity to submit an application and would prohibit attempts to cure any defects. If the legislature had intended to bar candidates from curing defects by filing more than one application for the same office, it could have clearly done so, as it did for filing applications for more than one office. Instead, the legislature has built safeguards into the application process to allow the candidate every opportunity to have his or her name placed on the ballot, such as the short time deadlines for the review of applications. Furthermore, allowing candidates to cure defects by filing more than one application for the same office discourages political gamesmanship and election fraud.

We hold that a candidate may file more than one application for the same office and, if the subsequent application meets the statutory requirements, a candidate is entitled to have his or her name placed on the ballot. Therefore, because their second applications complied with the requirements of election code section 172.021, Steen and Ducato are entitled to have their names placed on the ballot for the March 12, 2002 Republican Primary election.

## NOTARIZATION

### *Cloud*

On January 2, 2002, Robert Cloud took his candidate application form to his local bank to be notarized. Cloud initially signed in the space reserved for the administering officer's title. Cloud then crossed through this signature and signed

in the space provided for the candidate. The notary then acknowledged his signature, wrote in her title, and affixed her notary seal.

Later that day, Cloud filed his application to be placed on the March 12, 2002 Republican Primary ballot for the office of Precinct Nine Chairman. Crittenden accepted the application.

On January 9, 2002, Cloud received a letter from Crittenden stating that his name would not appear on the ballot because of an improper notarization.

### Discussion

Cloud contends that his application was properly notarized because it was signed and sworn to by the candidate and indicated the date that he swore to it. TEX. ELEC.CODE ANN. § 141.032(2). Crittenden contends that Cloud's application was ineffective because it had strike outs in the notary section.

Crittenden relies on *In re Gibson*, 960 S.W.2d 418 (Tex.App.-Waco 1998, orig. proceeding) for support. In that case, the candidate failed to complete the blanks in the application form before he signed it, had it notarized, or filed it. *Id.* at 420–21. The candidate therefore failed to meet the statutory requirements to have his name placed on the ballot because his application was defective. *Id.*

The undisputed evidence in this case, however, is that Cloud signed the application before a notary public not once but twice before it was notarized. The application also indicates the date that Cloud swore to it and contains the notary public's title and seal. Therefore, Cloud's application was properly notarized and he is entitled to have his name placed on the ballot for the March 12, 2002 Republican Primary election. *See Burris v. Gonzalez*, 269 S.W.2d 696, 696–97 (Tex.Civ.App.-San Antonio 1954, orig. proceeding) (holding candidate entitled to have name placed on ballot where evidence was undisputed that he swore to application, even though notary inadvertently failed to sign it).

### CONCLUSION

We conditionally grant the writs of mandamus and direct Sharon Crittenden, Hood County Republican Party Chair, to certify Linda Steen as a candidate for County Judge, Jim Ducato as a candidate for County Commissioner, Place Two, and Robert Cloud as a candidate for Precinct Nine Chairman, for the March 12, 2002 Republican Primary election and to place their names on the primary ballot. TEX. R.APP. P. 52.8. The writs will not issue unless Crittenden fails to comply with this opinion.